**KIRK-HUGHES & ASSOCIATES**
GERALDINE KIRK-HUGHES, ESQ.
Nevada Bar No. 003444
2551 S. Ft. Apache Road, #103
Las Vegas, Nevada  89117
(702) 233-8683
Fax No. (702) 233-8661
gkhughes@kirkhugheslaw.com
Attorney for Debtor, Pro Se

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | CASE NO.:  BK-S-10-10004-BAM |
| | ) | Chapter 11 |
| GERALDINE HUGHES, | ) | |
| | ) | |
| Debtor. | ) | Date:  OST PENDING |
| | ) | Time:  OST PENDING |

## AMENDED DEBTOR'S MOTION TO SELL 1820 LaVERNE CIRCLE, LAS VEGAS, NEVADA; AND 5697 E. ARIPA ROAD, HARRISON, IDAHO; AND TO LIFT THE STAY AS TO THESE TWO PROPERTIES ONLY

Debtor GERALIDINE KIRK-HUGHES by and through her attorneys, **LAW OFFICES OF KIRK-HUGHES & ASSOCIATES/PRO SE**, hereby submits this Amended Motion to this Honorable Court for an Order allowing the short sale of the two (2) investment properties named in the title, *supra,* and the lifting of the Stay as to these two (2) sales only.

This Amended Motion is based on the attached Memorandum of Points and Authorities; the Declaration of the Debtor; the pleadings, papers and other records contained in the Court's file; and the evidence and oral argument entertained by the

1

1  Court at the time of the Hearing on this Motion.

2      DATED this 7th day of September, 2010.

3                              **KIRK-HUGHES & ASSOCIATES**

4                              */s/ Geraldine Kirk-Hughes*

5

6                              Geraldine Kirk-Hughes, Esq.
7                              Nevada Bar No. 003444
                              2551 S. Ft. Apache Rd., #103
8                              Las Vegas, Nevada  89117
                              (702) 233-8683
9                              Fax No. (702) 233-8661
                              gkhughes@kirkhugheslaw.com
10                             Attorney for Debtor, Pro Se

11

12              **MEMORANDUM OF POINTS AND AUTHORITIES**

13                  **I.    Statement of Facts**

14
       BAC  Home  Loans  Servicing,  LP,  is  the  beneficiary  and
15
   holder  of  two  Promissory  Notes  that  evidence  loans  to  Debtor
16
   in  the  amount  of  Three  Hundred  Fifty-nine  Thousand  Seven
17
   Hundred  Seventeen  Dollars  and  Seventy-four  Cents  ($359,717.74)
18
   and  Five  Hundred  Ninety-one  Thousand  Nine  Hundred  Twenty-nine
19
   Dollars  and  Sixty-eight  Cents  ($591,929.68).
20
       The  first  Note  is  secured  by  a  Deed  of  Trust  in  the
21
   amount  of  $359,717.74  against  certain  real  property  owned  by
22
   Debtor  and  located  at  1820  LaVerne  Circle,  Las  Vegas,  Nevada,
23
   89108.   The  second  Note  is  also  secured  by  a  Deed  of  Trust  but
24
   in  the  amount  of  $591,929.68  against  the  real  property  owned
25
   by  Debtor  and  located  at  5697  E.  Aripa  Road,  Harrison,  Idaho.
26
   ///
27

28

Due to the economic environment that has taken and continues to take its toll on everyone and particularly on those who have invested in real estate, the Debtor has fallen into default on her obligations to the Creditor, BAC HOME LOANS SERVICING, LP, with regard to the above-described real properties. Because of her financial situation, the Debtor, on January 3, 2010, filed a Chapter 13 Petition which was converted to Chapter 11 on or about March 16, 2010.

In her Petition, the Debtor listed four (4) real properties she owns, included the 1820 LaVerne Circle property and the 5697 Aripa Road property. In order to increase the probability of success with regard to the Debtor's Chapter 11 Plan, the Debtor must sell these two (2) properties on short sales and has buyers for each.

In fact, BAC has informed the Debtor that it has conditionally approved the short sale on the LaVerne property based on the Mortgage Insurance giving its approval, which it will do if the sale is approved by the Bankruptcy Court in this matter and the Stay is lifted as to the LaVerne property only for this specific sale.

BAC HOME LOANS SERVICING, LP, has not given conditional approval with regard to the sale of the Aripa property because the Debtor has applied for a loan modification for that property pursuant to the Agreement reached between Countrywide

3

1  and the Attorney General for the State of California as Idaho

2  has joined in that Agreement.

3  ## II.    Statement of Authorities

4  ### *The LaVerne Property:*

5  The Debtor, GERALIDINE KIRK-HUGHES, contends that this

6  Honorable Court can grant her authority to sell the LaVerne

7  real property pursuant to 11 USC 363(b) which states in

8  pertinent part:    "Section 363. Use, sale, or lease of

9  property.   .   .   .   **(b)(1)** The trustee, after notice and a

10 hearing, may use, sell, or lease, other than in the ordinary

11 course of business, property of the estate, .   .   .."

12 Upon granting this Motion, the Debtor, under the auspices

13 of the Las Vegas U.S. Trustee's Office, would sell to Antonio

14 Wilson and/or assigns for the purchase price of One Hundred

15 Thousand Dollars ($100,000.00) as a short sale the real

16 property located at 1820 LaVerne Circle, Las Vegas, Nevada,

17 89108, and specifically described as

> STONEHAVEN: Plat Book 10, Page 12, Lot 11,
> Block 2 as recorded in the Office of the
> County Recorder, Clark County; APN:139-
> 19-318-020.

18 The Debtor attaches hereto Exhibit 1, the *Residential*

19 *Purchase Agreement,* which provides to the Court the specifics

20 of the short sale of 1820 LaVerne Circle, Las Vegas, Nevada,

21 89108.

///

4

**_The Aripa Property:_**

The Debtor has applied for a loan modification for the Aripa property pursuant to the Agreement reached between Countrywide and the Attorney General for the State of California as Idaho has joined several other States in this Agreement. Therefore, the Bank of America, which acquired Countrywide in 2008, must enter into a loan modification with the Debtor herein pursuant to the terms of this Agreement.

As an alternative to acquiring a loan modification on the Aripa Property, the Debtor contends that 11 USC 363(b) as cited above also gives this Honorable Court the authority to approve a short sale for this property.

If the sale is approved, the Debtor would sell to Joseph and Terry Keane and/or assigns for the purchase price of Three Hundred Seventy-five Thousand Dollars ($375,000.00) as a short sale the real property located at 5697 E. Aripa Road, Harrison, Idaho, 83833, and specifically described as

> The Southeast quarter of the Northeast quarter of the Southwest Quarter of Section 3, Township 49 North, Range 3 West, Boise Meridian, Kootenai County, Idaho; Parcel ID Number, 49NO3W-03-5250.

The Debtor attaches hereto Exhibit 2, _The Real Estate Purchase and Sale Agreement,_ which provides for the Court's convenience the specifics of the short sale of 5697 E. Aripa Road, Harrison, Idaho, 83833.

These sales would benefit not only BAC but all the Creditors, the Debtor and the Buyers as they would allow the Debtor to modify her Chapter 11 Plan which, in turn, would increase its probability of success and be a benefit to all Creditors. Not having to make monthly payments on the two (2) mortgages will give the Debtor more cash flow to facilitate a Plan beneficial to the remaining Creditors.

*Lift Stay Re:Properties:*

In order to effectuate the sales, this Court will have to grant the lifting of the Automatic Stay with regard to these two (2) properties pursuant to 11 USC 362(d)(3) which states:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—  .  .  .
>> **(3)** with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>>> **(A)** the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time;  .  .  .

Just as with granting Debtor's Motion to sell the two (2) properties at issue herein, the lifting of the Automatic Stay will benefit not only BAC but all the Creditors, the Debtor and

the Buyers as this would allow the Debtor to modify her Chapter 11 Plan which, in turn, would increase the probability of success all to the benefit of all Creditors. Not having to make monthly payments on the two (2) mortgages will give the Debtor more cash flow to facilitate a Plan beneficial to the remaining Creditors.

### III.  Conclusion

For the reasons set forth above, the Debtor, GERALDINE KIRK-HUGHES, respectfully requests that this Court will issue an Order directing her to sell the LaVerne Circle property and, as an alternative to a loan modification, the Aripa Road property. Similarly, the Debtor requests that this Court will terminate the Stay as to these two (2) properties so that the sale of each can go immediately into Escrow with the sales being completed forthwith.

DATED this 7th day of September, 2010.

**KIRK-HUGHES & ASSOCIATES**

*/s/ Geraldine Kirk-Hughes*

Geraldine Kirk-Hughes, Esq.
Nevada Bar No. 003444
2551 S. Ft. Apache Rd., #103
Las Vegas, Nevada  89117
(702) 233-8683
Fax No. (702) 233-8661
gkhughes@kirkhugheslaw.com
Attorney for Debtor, Pro Se

# EXHIBIT 1



# RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions and Earnest Money Receipt)

Date: __April 7, 2010__

___ANTONIO C. WILSON___ , and or ASSIGNEE _____ ("Buyer"), hereby offers to purchase
___1820 LaVerne Circle, Las Vegas,, NV 89108___ ("Property"),
within the city or unincorporated area of ___Las Vegas___, County of ___CLARK___,
State of Nevada, A.P.N. # __139-19-318-020__ for the purchase price of $ _100,000.00_
( ___One Hundred Thousand___ dollars) ("Purchase Price") on the terms
and conditions contained herein:
BUYER ☒ does -OR- ☐ does not intend to occupy the Property as a residence.

## Buyer's Offer

**I.    FINANCIAL TERMS & CONDITIONS:**

$ ___1,000.00___ **A. EARNEST MONEY DEPOSIT** ("EMD") is ☐ presented with this offer -OR- ☐ _____

*(NOTE: It is a felony in the State of Nevada–punishable by up to four years in prison and a $5,000 fine–to write a check for which there are insufficient funds. NRS 193.130(2)(d).)*

$ ___n/a___ **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____. The
additional deposit ☐ will -OR- ☐ will not be considered part of the EMD. (Any conditions on the additional
deposit should be set forth in Section 28 herein.)

$ ___96,500.00___ **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A <u>NEW LOAN</u> ON
THE FOLLOWING TERMS AND CONDITIONS:**
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____ .
Interest: ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years. Initial rate of interest not to
exceed _____ %. Initial monthly payment not to exceed $ _____ , not including taxes, insurance
and/or PMI or MIP.

$ _____ **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO <u>ASSUME THE</u>
<u>FOLLOWING EXISTING LOAN(S):</u>**
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____ .
Interest: ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years. Initial rate of interest not to
exceed _____ %. Monthly payment not to exceed $ _____ , not including taxes, insurance and/or PMI or MIP.

$ _____ **E. BUYER TO EXECUTE A <u>PROMISSORY NOTE SECURED BY DEED OF TRUST</u> PER TERMS
IN "FINANCING ADDENDUM."**

$ ___2,500.00___ **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in cash or certified funds to be paid
at Close of Escrow ("COE").

$ ___100,000.00___ **G. TOTAL PURCHASE PRICE. (This price DOES NOT include closing costs, prorations, or other fees
and costs associated with the purchase of the Property as defined herein.)**

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: ___ANTONIO C. WILSON___ , and or ASSIGNEE        BUYER(S) INITIALS: _AW_ / _____

Property Address: ___1820 LaVerne Circle___
___Las Vegas,, NV 89108___        SELLER(S) INITIALS: _____ / _____

**2.    ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

    **A.    NEW LOAN APPLICATION:** Within _____DONE_____ business days of Acceptance, Buyer agrees to (1) submit a completed loan application to a lender of Buyer's choice; (2) authorize ordering of the appraisal (per lender's requirements); and (3) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer ☒ **does -OR-** ☐ **does not** authorize lender to provide loan status updates to Seller's and Buyer's Brokers, as well as Escrow Officer. Buyer agrees to use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

    **B.    CASH PURCHASE:** Within _____N/A_____ business days of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

    **C.    APPRAISAL:** If an appraisal is required as part of this agreement, or requested by Buyer, and if the appraisal is less than the Purchase Price, the transaction will go forward if (1) Buyer, at Buyer's option, elects to pay the difference and purchase the Property for the Purchase Price, or (2) Seller, at Seller's option, elects to adjust the Purchase Price accordingly, such that the Purchase Price is equal to the appraisal. If neither option (1) or (2) is elected, then Parties may renegotiate; if renegotiation is unsuccessful, then either Party may cancel this Agreement upon written notice, in which event the EMD shall be returned to Buyer.

**3.    SALE OF OTHER PROPERTY:**

    **A.** This Agreement
    ☒ **is not -OR-**
    ☐ **is** contingent upon the sale (and closing) of another property which address is

_____ .

    **B.** Said Property
    ☐ is currently listed
    ☐ **is not -OR-** ☐ **is**
    presently in escrow with _____ .
    Escrow Number: _____ . Proposed Closing Date: _____ .

When Buyer has accepted an offer on the sale of this other property, Buyer will promptly deliver a written notice of the sale to Seller. If Buyer's escrow on this other property is terminated, abandoned, or does not close on time, this Agreement will terminate without further notice unless the parties agree otherwise in writing. If Seller accepts a bona fide written offer from a third party prior to Buyer's delivery of notice of acceptance of an offer on the sale of Buyer's property, Seller shall give Buyer written notice of that fact. Within three (3) days of receipt of the notice, Buyer will waive the contingency of the sale and closing of Buyer's other property, or this Agreement will terminate without further notice. In order to be effective, the waiver of contingency must be accompanied by reasonable evidence that funds needed to close escrow will be available and Buyer's ability to obtain financing is not contingent upon the sale and/or close of any other property.

**4.    FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(E) of this Agreement, all items are transferred in an "AS IS" condition.

    **A.** All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s), window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);

    **B.** The following additional items of personal property: _____

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____ANTONIO C. WILSON & ASSIGNEE_____,_____ BUYER(S) INITIALS: _____ / _____

                          1820 LaVerne Circle

Property Address: _____Las Vegas,, NV  89108_____ SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**      ©2009 Greater Las Vegas Association of REALTORS®      Page 2 of 11

Antonio C. Wilson

**5.   ESCROW:**

    **A.   OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after execution of this Agreement ("Opening of Escrow"), at _____ DIRECT TITLE _____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with _____ Maria Rodde _____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement and receipt of the EMD (if applicable). ESCROW HOLDER is instructed to notify the Parties (through their respective Brokers) of the opening date and the Escrow Number.

    **B.   EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited per the Earnest Money Receipt Notice and Instructions contained herein

    **C.   CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on (date) _____ . If the designated date falls on a weekend or holiday, COE shall be the next business day.

    **D.   IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation which became effective January 1, 1987, that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

    **E.   FIRPTA:** If applicable, Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required. (See 26 USC Section 1445).

**6.   TITLE INSURANCE:** Upon COE, Buyer will be provided with the following type of title insurance policy: ☐ CLTA; ☒ **ALTA-Residential; -OR- ☐ ALTA-Extended (including a survey, if required).**

**7.   PRORATIONS, FEES AND EXPENSES (Check appropriate box):**

    **A.   TITLE AND ESCROW FEES:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | N/A |
|---|:---:|:---:|:---:|:---:|
| Escrow Fees | ☐ | ☐ | ☒ | ☐ |
| Lender's Title Policy | ☐ | ☒ | ☐ | ☐ |
| Owner's Title Policy | ☒ | ☐ | ☐ | ☐ |
| Real Property Transfer Tax | ☒ | ☐ | ☐ | ☐ |
| Other: _____ | ☐ | ☐ | ☐ | ☐ |

    **B.   PRORATIONS:**

| TYPE | PAID BY SELLER | PRORATE | N/A |
|---|:---:|:---:|:---:|
| CIC (Common Interest Community) Assessments | ☐ | ☒ | ☐ |
| CIC Periodic Fees | ☐ | ☒ | ☐ |
| SIDs / LIDs / Bonds / Assessments | ☐ | ☐ | ☒ |
| Sewer Use Fees | ☐ | ☐ | ☒ |
| Real Property Taxes | ☐ | ☒ | ☐ |
| Other: _____ | ☐ | ☐ | ☐ |

All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplementals or adjustments that occur after COE will be handled by the parties outside of Escrow.

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ ANTONIO C. WILSON & ASSIGNEE ____ , _____    BUYER(S) INITIALS: _____ *[initials]* _____ / _____

Property Address: _____ 1820 LaVerne Circle _____
Las Vegas,, NV  89108    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Antonio C. Wilson

1  **C.  INSPECTIONS AND RELATED EXPENSES (See also Section 12):**
2  Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the
3  licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will
4  ensure that necessary utilities (gas, power and water) are turned on and supplied to the Property within two (2) business days
5  after execution of this Agreement, to remain on until COE. (It is strongly recommended that Buyer retain licensed Nevada
6  professionals to conduct inspections.)

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|---|---|---|---|
| 8  Appraisal | ☒ | ☐ | ☐ | ☐ |
| 9  CIC Capital Contribution | ☐ | ☐ | ☐ | ☐ |
| 10  CIC Transfer Fees | ☐ | ☐ | ☐ | ☒ |
| 11  CLUE Report ordered by Seller | ☐ | ☐ | ☐ | ☒ |
| 12  Fungal Contaminant Inspection | ☐ | ☐ | ☐ | ☒ |
| 13  Home Inspection | ☐ | ☐ | ☐ | ☒ |
| 14  Mechanical Inspection | ☐ | ☐ | ☐ | ☒ |
| 15  Oil Tank Inspection | ☐ | ☐ | ☐ | ☒ |
| 16  Pool/Spa Inspection | ☐ | ☐ | ☐ | ☒ |
| 17  Roof Inspection | ☐ | ☐ | ☐ | ☒ |
| 18  Septic Inspection (requires pumping) | ☐ | ☐ | ☐ | ☒ |
| 19  Septic Lid Removal | ☐ | ☐ | ☐ | ☒ |
| 20  Septic Pumping | ☐ | ☐ | ☐ | ☒ |
| 21  Soils Inspection | ☐ | ☐ | ☐ | ☒ |
| 22  Structural Inspection | ☐ | ☐ | ☐ | ☒ |
| 23  Survey _____ (type) | ☐ | ☐ | ☐ | ☒ |
| 24  Termite/Pest Inspection | ☐ | ☐ | ☐ | ☒ |
| 25  Well Inspection (Quantity) | ☐ | ☐ | ☐ | ☒ |
| 26  Well Inspection (Quality) | ☐ | ☐ | ☐ | ☒ |
| 27  Wood-Burning Device/Chimney Inspection | | | | |
| 28  (includes cleaning) | ☐ | ☐ | ☐ | ☒ |
| 29  Other: _____ | ☐ | ☐ | ☐ | ☒ |
| 30  Re-Inspections | ☐ | ☐ | ☐ | ☒ |

32  If any inspection is not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is
33  deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have
34  reasonably identified had it been conducted, except as otherwise provided by law.

36  **D.  CERTIFICATIONS:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|---|---|---|---|
| 39  Fungal Contaminant | ☐ | ☐ | ☐ | ☒ |
| 40  Roof | ☐ | ☐ | ☐ | ☒ |
| 41  Septic | ☐ | ☐ | ☐ | ☒ |
| 42  Well | ☐ | ☐ | ☐ | ☒ |
| 43  Wood-Burning Device/Chimney Certification | ☐ | ☐ | ☐ | ☒ |
| 44  Other: _____ | ☐ | ☐ | ☐ | ☒ |

47  The foregoing expenses for inspections and certifications will be paid outside of Escrow unless the Parties present instructions
48  to the contrary prior to COE (along with the applicable invoice). A certification is not a warranty. Notwithstanding the above
49  elections, in the event an inspection reveals problems with any of the foregoing, Buyer reserves the right to require a
50  certification.

52  **E.  SELLER'S ADDITIONAL COSTS AND LIMIT OF LIABILITY:** Seller agrees to pay a maximum
53  amount of $ __ZERO_____ to correct defects and/or requirements disclosed by inspection reports, appraisals,
54  and/or certifications. It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use. Buyer reserves
55  the right to request additional repairs based upon the Seller's Real Property Disclosure. Items of a general maintenance or

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: ____ANTONIO C. WILSON & ASSIGNEE__,____  BUYER(S) INITIALS: _Cu/_____

Property Address: ____1820 LaVerne Circle____
____Las Vegas,, NV  89108____  SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**

©2009 Greater Las Vegas Association of REALTORS®

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Antonio C. Wilson

1 cosmetic nature which do not materially affect value or use of the Property, which existed at the time of Acceptance and which
2 are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this section.
3 The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the
4 Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one
5 party.
6

7     **F.**   **LENDER'S FEES: In addition** to Seller's expenses above, Seller will contribute $ 0.00
8 to Buyer's Lender's Fees and Buyer's Title and Escrow Fees ☐ **including -OR-** ☐ **excluding** costs which Seller must pay
9 pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have different appraisal and
10 financing requirements, which will affect the parties' rights and costs under this Agreement.
11

12     **G.**   **HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home
13 Protection Plans that provide coverage to Buyer after COE. **Buyer** ☒ **waives -OR-** ☐ **requires** a Home Protection Plan with
14 _____ ☐ **Seller -OR-** ☐ **Buyer** will pay for the Home Protection
15 Plan at a price not to exceed $ _____ . **Buyer** will order the Home Protection Plan. Neither Seller nor Brokers make
16 any representation as to the extent of coverage or deductibles of such plans. ESCROW HOLDER is not responsible for
17 ordering the Home Protection Plan.
18

19     **H.**   **OTHER FEES:** Buyer will also pay $ 300.00 _____ to Buyer's Broker for _____ .
20

21 **8.**   **TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
22 tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes,
23 (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
24 utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COE. Buyer is advised the
25 Property may be reassessed after COE which may result in a real property tax increase or decrease.
26

27 **9.**   **COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"),
28 Seller or his authorized agent shall request the CIC documents and certificate listed in NRS 116.4109 (collectively, the "resale
29 package") within two (2) business days of Acceptance and provide the same to Buyer within one (1) business day of Seller's
30 receipt thereof. Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the
31 date of receipt of the resale package. If Buyer does not receive the resale package within fifteen (15) calendar days of
32 Acceptance, this Agreement may be cancelled in full by Buyer without penalty. If Buyer elects to cancel this Agreement
33 pursuant to this section, he must deliver, via hand delivery or prepaid U.S. mail, a written notice of cancellation to Seller or his
34 authorized agent identified in the Confirmation of Representation at the end of this Agreement. Upon such written cancellation,
35 Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW
36 HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package
37 will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COE.
38

39 **10.**  **DISCLOSURES: Within five (5) calendar days of Acceptance of this Agreement,** Seller will provide the
40 following Disclosures and/or documents (each of which is incorporated herein by this reference). **Check applicable boxes.**

41 ☐ **Construction Defect Claims Disclosure,** if Seller has marked "Yes" to Paragraph 1(d) of the
42     Seller Real Property Disclosure Form (NRS 40.688)
43 ☐ **Fungal (Mold) Notice Form** (not required by Nevada law)
44 ☐ **Lead-Based Paint Disclosure and Acknowledgment,** required if constructed before 1978 (24 CFR 745.113)
45 ☐ **Methamphetamine Lab Disclosure,** if applicable (NRS 40.770, NRS 489.776)
46 ☐ **Pest Notice Form** (not required by Nevada law)
47 ☐ **Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer**
48 ☐ **Rangeland Disclosure** (NRS 113.065)
49 ☒ **Seller Real Property Disclosure Form** (NRS 113.130)
50 ☐ **Other** (list) _____
51

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ ANTONIO C. WILSON & ASSIGNEE _____,_____    BUYER(S) INITIALS: _AW_

                        1820 LaVerne Circle
Property Address: _____ Las Vegas,, NV 89108 _____    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**          ©2009 Greater Las Vegas Association of REALTORS®         Page 5 of 11

## 11.  ADDITIONAL DISCLOSURES:

**A.   LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NAC 645.640, N/A _____ is a licensed real estate agent in the State(s) of _____ , and has the following interest, direct or indirect, in this transaction: ☐ Principal (Seller or Buyer) -OR- ☐ family relationship or business interest: _____ .

**B.**   In addition, for **NEW CONSTRUCTION,** to the extent applicable, Seller will provide: Public Offering Statement (NRS 116.4108); Electric Transmission Lines (NRS 119.1835); Public Services and Utilities (NRS 119.183); Initial Purchaser Disclosure (NRS 113); Construction Recovery Fund (NRS 624); Gaming Corridors (NRS 113.070); Water/Sewage (NRS 113.060); Impact Fees (NRS 278B.320); Surrounding Zoning Disclosure (NRS 113.070); FTC Insulation Disclosure (16 CFR 460.16); and Other: _____ .

**C.   AIRPORT NOISE:** Buyer hereby acknowledges the proximity of various overflight patterns, airports (municipal, international, military and/or private) and helipads. Buyer also fully understands that existing and future noise levels at this location, associated with existing and future airport operations, may affect the livability, value and suitability of the Property for residential use. Buyer also understands that these airports have been at their present location for many years, and that future demand and airport operations may increase significantly. For further information, contact your local department of aviation or the Federal Aviation Administration.

**D.   FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, ancestry, handicap or familial status and any other current requirements of federal or state fair housing law.

**E.**   In addition, Buyer acknowledges receipt of:
- **Residential Disclosure Guide** (NRS 645.194)
- **Consent to Act,** if applicable (NRS 645.252)
- **Duties Owed by a Nevada Real Estate Licensee** (if one party is unrepresented) (NRS 645.252)
- **For Your Protection - Get Home Inspection** (HUD 92564-CN) For FHA Loans

## 12.  BUYER'S DUE DILIGENCE:

**A.   DUE DILIGENCE PERIOD:** Buyer shall have _____5_____ calendar days from Acceptance to complete Buyer's Due Diligence. Buyer shall ensure that all inspections and certifications are initiated in a timely manner as to complete the Due Diligence in the time outlined herein. (If utilities are not supplied by the deadline referenced herein or if the disclosures are not delivered to Buyer by the deadline referenced herein, then Buyer's Due Diligence Period will be extended by the same number of calendar days that Seller delayed supplying the utilities or delivering the disclosures, whichever is longer.) During this period Buyer shall have the exclusive right at Buyer's discretion to cancel this Agreement. In the event of such cancellation, unless otherwise agreed herein, the EMD will be refunded to Buyer. If Buyer provides Seller with notice of objections, the Due Diligence Period will be extended by the same number of calendar days that it takes Seller to respond in writing to Buyer's objections. If Buyer fails to cancel this Agreement within the Due Diligence Period (as it may be extended), Buyer will be deemed to have waived the right to cancel under this section.

**B.   PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to have non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools; proximity and

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name:  _____ANTONIO C. WILSON & ASSIGNEE_____ ,   BUYER(S) INITIALS: _____ / _____

Property Address:  _____1820 LaVerne Circle_____
_____Las Vegas,, NV  89108_____   SELLER(S) INITIALS: _____ / _____

1 adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection;
2 other governmental services; existing and proposed transportation; construction and development; noise or odor from any
3 source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report,
4 Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone
5 number of the inspector.
6
7 **C. PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company
8 shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5)
9 business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be
10 deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business
11 days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such
12 exception removed or to correct each such other matter as aforesaid, Buyer shall have the option to: (a) terminate this
13 Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title
14 to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted
15 Exceptions."
16
17 **13. WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of
18 the Property within ____2____ calendar days prior to COE to ensure the Property and all major systems, appliances,
19 heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure
20 Statement, and that the Property and improvements are in the same general condition as when this Agreement was signed by
21 Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on. If any
22 systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right
23 to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or
24 power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have
25 been completed as agreed, and (c) Seller has complied with Seller's other obligations. If Buyer elects not to conduct a walk-
26 through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer
27 releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection,
28 except as otherwise provided by law.
29
30 **14. DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, parking permits
31 (if freely transferable), gate transponders and garage door opener/controls outside of Escrow, upon COE. Seller agrees to
32 vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than
33 ☒ COE -OR- ☐ _____ . In the event Seller does not vacate the Property by this time, Seller shall be
34 considered a trespasser and shall be liable to Buyer for the sum of $ 50.00 _____ per calendar day in addition to
35 Buyer's legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be
36 considered abandoned by Seller.
37
38 **15. RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any
39 material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and
40 Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift
41 to Buyer.
42
43 **16. ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable by
44 Buyer.
45
46 **17. CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the
47 terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any
48 expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction
49 (unless otherwise provided herein).
50
51 **18. DEFAULT:**
52 **A. MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the
53 parties agree to engage in mediation, a dispute resolution process, through GLVAR. Not withstanding the foregoing,
54 in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply.
55

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ANTONIO C. WILSON & ASSIGNEE____,    BUYER(S) INITIALS: _____

Property Address: _____1820 LaVerne Circle_____
_____Las Vegas,, NV 89108_____    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**       ©2009 Greater Las Vegas Association of REALTORS®    Page 7 of 11

**B.   IF BUYER DEFAULTS:** If Buyer defaults in performance under this Agreement, Seller shall have one of the following legal recourses against Buyer (check one only):

☒ As Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

*-OR-*

☐ Seller shall have the right to recover from Buyer all of Seller's actual damages that Seller may suffer as a result of Buyer's default including, but not limited to, commissions due, expenses incurred until the Property is sold to a third party and the difference in the sales price.

**C.   IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

## Instructions to Escrow

**19.   ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct. If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves. Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement. In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

**20.   UNCLAIMED FUNDS:** In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

**21.   BROKER FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due.

**22.   WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name:   _____ANTONIO C. WILSON & ASSIGNEE_____,   BUYER(S) INITIALS: _____ *aw*

Property Address: _____1820 LaVerne Circle_____
_____Las Vegas,, NV  89108_____   SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Antonio C. Wilson

1 or warranties, unless expressly stated herein. Buyer agrees to satisfy himself, as to the condition of the Property, prior to COE.
2 Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to
3 make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims
4 against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c)
5 environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's
6 proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to
7 Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to
8 conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is
9 limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.
10

## Other Matters

11 **23.    DEFINITIONS: "Acceptance"** means the date that both parties have consented to and received a final, binding
12 contract by affixing their signatures to this Agreement and all counteroffers. **"Agent"** means a licensee working under a Broker
13 or licensees working under a developer. **"Agreement"** includes this document as well as all accepted counteroffers and
14 addenda. **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the
15 Property. **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real
16 estate agents associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means
17 a calendar day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means
18 Common Interest Community (formerly known as **"HOA"** or homeowners association). **"CIC Capital Contribution"** means
19 a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. **"CIC Transfer Fees"**
20 means the administrative service fee charged by a CIC to transfer ownership records. **"CLUE"** means Comprehensive Loss
21 Underwriting Exchange. **"Close of Escrow (COE)"** means the time of recordation of the deed in Buyer's name. **"Default"**
22 means the failure of a Party to observe or perform any of its material obligations under this Agreement. **"Delivered"** means
23 personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or
24 mailed by regular mail. **"Down Payment"** is the Purchase Price less loan amount(s). **"EMD"** means Buyer's earnest money
25 deposit. **"Escrow Holder"** means the neutral party that will handle the escrow. **"FHA"** is the U.S. Federal Housing
26 Administration. **"GLVAR"** means the Greater Las Vegas Association of REALTORS®. **"IRC"** means the Internal Revenue
27 Code (tax code). **"LID"** means Limited Improvement District. **"N/A"** means not applicable. **"NAC"** means Nevada
28 Administrative Code. **"NRS"** means Nevada Revised Statues as Amended. **"Party"** or **"Parties"** means Buyer and Seller.
29 **"PITI"** means principal, interest, taxes, and hazard insurance. **"PMI"** means private mortgage insurance. **"PST"** means
30 Pacific Standard Time, and includes daylight savings time if in effect on the date specified. **"PTR"** means Preliminary Title
31 Report. **"Property"** means the real property and any personal property included in the sale as provided herein. **"Receipt"**
32 means delivery to the party or the party's agent. **"Seller"** means one or more individuals or the entity that is the owner of the
33 Property. **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance.
34 **"USC"** is the United States Code. **"VA"** is the Veterans Administration.
35

36 **24.    DELIVERY, FACSIMILE, COPIES AND NOTICES:**
37      A.    Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for
38 Seller or Buyer if represented. This Agreement may be signed by the parties on more than one copy, which, when taken
39 together, each signed copy shall be read as one complete form. Facsimile signatures may be accepted as original.
40

41      B.    Except as otherwise provided in Section 9, when a Party wishes to provide notice as required in this
42 Agreement, such notice shall be sent regular mail, personal delivery, by facsimile, overnight delivery and/or by email to the
43 Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read
44 receipt confirmed in the case of email. Any cancellation notice shall be contemporaneously faxed to Escrow.
45

46 **25.    IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party
47 electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost
48 to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.
49

50 **26.    OTHER ESSENTIAL TERMS:** Time is of the essence. No change, modification or amendment of this Agreement
51 shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This
52 Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and
53 intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties
54 agree that the county and state in which the Property is located is the appropriate forum for any action relating to this

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ANTONIO C. WILSON & ASSIGNEE___,___    BUYER(S) INITIALS: _____

Property Address: _____1820 LaVerne Circle_____
_____Las Vegas,, NV  89108_____    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**          ©2009 Greater Las Vegas Association of REALTORS®          Page 9 of 11

1 Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of
2 any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing
3 party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorneys fees and costs incurred by
4 such prevailing party.
5
6 **THIS IS A LEGALLY BINDING CONTRACT.** All parties are advised to seek independent legal and tax advice to review
7 the terms of this Agreement.
8
9 **NO REAL ESTATE BROKER/AGENT MAY SIGN FOR A PARTY TO THIS AGREEMENT UNLESS THE**
10 **BROKER OR AGENT HAS A PROPERLY EXECUTED POWER OF ATTORNEY TO DO SO.**
11
12 **THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®**
13 **(GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY**
14 **PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO**
15 **ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN**
16 **APPROPRIATE PROFESSIONAL.**
17
18 This form is available for use by the real estate industry. It is not intended to identify the user as a **REALTOR®**.
19 **REALTOR®** is a registered collective membership mark which may be used only by members of the NATIONAL
20 ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.
21
22 **27.    ADDENDUM(S) ATTACHED:** _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 **28.    ADDITIONAL TERMS:** _____
31 _____
32 _____
33 _____
34 _____
35 _____
36 _____
37 _____
38 _____
39 _____
40 _____
41 _____

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ ANTONIO C. WILSON & ASSIGNEE ____,_____    BUYER(S) INITIALS: _____

                                1820 LaVerne Circle

Property Address: _____ Las Vegas,, NV  89108 _____    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**                ©2009 Greater Las Vegas Association of REALTORS®                Page 10 of 11

## Earnest Money Receipt

BUYER'S AGENT ACKNOWLEDGES RECEIPT FROM BUYER HEREIN of the sum of $ __1,000.00__

evidenced by ☐ Cash,   ☐ Cashier's Check,   ☒ Personal Check, or ☐ Other _____

payable to __Direct Title__ . Upon Acceptance, Earnest Money to be deposited within ONE (1) business

day, with ☒ Escrow Holder, ☐ Buyer's Broker's Trust Account, - OR - ☐ Seller's Broker's Trust Account

Date: __04/07/2010__     Signed: *Ollie Kirk* _____ Buyer's Agent.

Ollie Kirk

## Buyer's Acknowledgement of Offer

**Upon Acceptance, Buyer agrees** to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

| Buyer's Signature | ANTONIO C. WILSON<br>Buyer's Printed Name | 04/07/2010<br>Date | __:__ ☐ AM ☐ PM<br>Time |
|---|---|---|---|

| Buyer's Signature | and or ASSIGNEE<br>Buyer's Printed Name | Date | __:__ ☐ AM ☐ PM<br>Time |
|---|---|---|---|

**Seller must respond by:** __5__ ☒ AM ☐ PM on (month) __April__ , (day) __8__ , (year) __2010__ . Unless this Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and time, this offer shall lapse and be of no further force and effect.

**Confirmation of Representation:** The Buyer is represented in this transaction by:

Buyer's Broker: _____   Agent's Name: __Ollie Kirk__

Company Name: __Full Service Realty__   Office Address: __2551 So. Fort Apache Rd #103__

Phone: __(702)233-8690__   Fax: __(702)233-4736__

Email: __Olliek1@aol.com__

## Seller's Response

☐ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

☐ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.

☐ **REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein **is not** accepted.

| Seller's Signature | Seller's Printed Name | Date | __:__ ☐ AM ☐ PM<br>Time |
|---|---|---|---|

| Seller's Signature | Seller's Printed Name | Date | __:__ ☐ AM ☐ PM<br>Time |
|---|---|---|---|

**Confirmation of Representation:** The Seller is represented in this transaction by:

Seller's Broker: _____   Agent's Name: _____

Company Name: _____   Office Address: _____

Phone: _____   Fax: _____

Email: _____

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: __ANTONIO C. WILSON    , and or ASSIGNEE__   BUYER(S) INITIALS: *AW* / _____

Property Address: __1820 LaVerne Circle__
__Las Vegas,, NV  89108__   SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**   ©2009 Greater Las Vegas Association of REALTORS®   Page 11 of 11

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Antonio C. Wilson

# EXHIBIT 2

## RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT

JULY 2010 EDITION
Page 1 of 7

THIS IS A LEGALLY BINDING CONTRACT. READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.

Idaho Association of REALTORS®

1  ID# _____49662536_____
2                                                                  DATE _____9/6/10_____
3  LISTING AGENCY _____Interstate Brokers, LLC_____ Office Phone # _208-683-4110_ Fax # __866-594-5950__
4  Listing Agent __MELODY JONES__ E-Mail ____melodyjones2@verizon.net____ Phone # ___208-818-2009__
5  SELLING AGENCY _____Interstate Brokers, LLC_____ Office Phone # _208-683-4110_ Fax # __866-594-5950__
6  Selling Agent __MELODY JONES__ E-Mail ____melodyjones2@verizon.net____ Phone # ___208-683-4110__
7  **1. BUYER:**
8  _____TERRY KEANE AND JOSEPH KEANE, AND OR ASSIGNS_____
9  (Hereinafter called "BUYER") agrees to purchase, and the undersigned SELLER agrees to sell the following described real estate hereinafter referred to as
10  "PROPERTY" COMMONLY KNOWN AS _____5697 E Aripa Road_____
11  _____Harrison_____ City ____Kootenai____ County, ID, Zip __83833__ legally described as: _____
12
13  OR Legal Description Attached as addendum # _____ (Addendum must accompany original offer.)
14
15  **2. $375,000.00** PURCHASE PRICE: _____Three Hundred Seventy-Five Thousand and Zero/100_____ DOLLARS,
16  payable upon the following TERMS AND CONDITIONS (not including closing costs):
17
18  **3. FINANCIAL TERMS:** Note: A+C+D+E must add up to total purchase price.
19
20  **(A). $1,000.00** EARNEST MONEY: BUYER hereby deposits __One Thousand and Zero/100__
21  DOLLARS as Earnest Money evidenced by: ☐ cash ☒ personal check ☐ cashier's check ☐ note (due date): _____
22  ☐ other _____ and a receipt is hereby acknowledged. Earnest Money to be
23  deposited in trust account ☐ upon receipt, or ☒ upon acceptance by BUYER and SELLER and shall be held by: ☒ Listing Broker ☐ Selling Broker
24  ☐ other _____ for the benefit of the parties hereto.
25  THE RESPONSIBLE BROKER SHALL BE: _____Interstate Brokers, LLC_____
26
27  **(B). ALL CASH OFFER:** ☐ NO ☒ YES If this is an all cash offer do not complete Sections 3C and 3D, fill blanks with "0" (ZERO). IF CASH
28  OFFER, BUYER'S OBLIGATION TO CLOSE SHALL NOT BE SUBJECT TO ANY FINANCIAL CONTINGENCY. BUYER agrees to provide SELLER
29  within __10__ business days (five [5] if left blank) from the date of acceptance of this agreement by all parties, evidence of sufficient funds and/or proceeds
30  necessary to close transaction. Acceptable documentation includes, but is not limited to, a copy of a recent bank or financial statement or contract(s) for
31  the sale of BUYER'S current residence or other property to be sold.
32
33  **(C). $0.00** NEW LOAN PROCEEDS: This Agreement is contingent upon BUYER obtaining the following financing:
34  ☐ FIRST LOAN of $ _____ not including mortgage insurance, through ☐ FHA, ☐ VA, ☐ CONVENTIONAL, ☐ IHFA, ☐ RURAL
35  DEVELOPMENT, ☐ OTHER _____ with interest not to exceed _____ % for a period of
36  _____ year(s) at: ☐ Fixed Rate ☐ Other _____. BUYER shall pay no more than _____ point(s) plus origination fee if any. SELLER shall pay
37  no more than _____ point(s). Any reduction in points shall first accrue to the benefit of the ☐ BUYER ☐ SELLER ☐ Divided Equally ☐ N/A.
38
39  ☐ SECOND LOAN of $ _____ with interest not to exceed _____ % for a period of _____ year(s) at: ☐ Fixed Rate
40  ☐ Other _____. BUYER shall pay no more than _____ point(s) plus origination fee if any. SELLER shall pay no more than
41  _____ point(s). Any reduction in points shall first accrue to the benefit of the ☐ BUYER ☐ SELLER ☐ Divided Equally ☐ N/A.
42
43  LOAN APPLICATION: BUYER ☐ has applied ☐ shall apply for such loan(s) within _n/a_ business days (five [5] if left blank) of SELLER'S acceptance.
44  Within __n/a__ business days (ten [10] if left blank) of final acceptance of all parties, BUYER agrees to furnish SELLER with a written confirmation
45  showing lender approval of credit report, income verification, debt ratios, and evidence of sufficient funds necessary to
46  close transaction in a manner acceptable to the SELLER(S) and subject only to satisfactory appraisal and final lender underwriting. If such
47  written confirmation is not received by SELLER(S) within the strict time allotted, SELLER(S) may at their option cancel this agreement by notifying
48  BUYER(S) in writing of such cancellation within __n/a__ business days (three [3] if left blank) after written confirmation was required. If SELLER does not
49  cancel within the strict time period specified as set forth herein, SELLER shall be deemed to have accepted such written confirmation of lender approval
50  and shall be deemed to have elected to proceed with the transaction. SELLER'S approval shall not be unreasonably withheld. If an appraisal is
51  required by lender, the PROPERTY must appraise at not less than purchase price or BUYER'S Earnest Money may be returned at BUYER'S
52  request. BUYER may also apply for a loan with different conditions and costs and close transaction provided all other terms and conditions of this
53  Agreement are fulfilled, and the new loan does not increase the costs or requirements to the SELLER. FHA / VA: If applicable, it is expressly agreed
54  that notwithstanding any other provisions of this contract, BUYER shall not be obligated to complete the purchase of the PROPERTY described herein or
55  to incur any penalty or forfeiture of Earnest Money deposits or otherwise unless BUYER has been given in accordance with HUD/FHA or VA
56  requirements a written statement by the Federal Housing Commissioner, Veterans Administration or a Direct Endorsement lender setting forth the
57  appraised value of the PROPERTY of not less than the sales price as stated in the contract. SELLER agrees to pay fees required by FHA or VA.
58
59  **(D). $** _____ ADDITIONAL FINANCIAL TERMS:
60  ☐ Additional financial terms are specified under the heading "OTHER TERMS AND/OR CONDITIONS" (Section 4).
61  ☐ Additional financial terms are contained in a FINANCING ADDENDUM of same date, attached hereto, signed by both parties.
62
63  **(E). $374,000.00** APPROXIMATE FUNDS DUE FROM BUYERS AT CLOSING (Not including closing costs): Cash at
64  closing to be paid by BUYER at closing in GOOD FUNDS, includes: cash, electronic transfer funds, certified check or cashier's check. NOTE: If
65  any of above loans being Assumed or taken "subject to", any net differences between the approximate balances and the actual balance of said loan(s)
66  shall be adjusted at closing of escrow in: ☐ Cash ☐ Other _____

BUYER'S Initials (_TK_)(_TK_) Date _9-7-10_                SELLER'S Initials (_____)(_____) Date _9-6-10_

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is available for use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: _____ 5697 E Aripa Road _____ Harrison __ ID#: __ 49662536

67 **4. OTHER TERMS AND/OR CONDITIONS:** This Agreement is made subject to the following special terms, considerations and/or contingencies which
68 must be satisfied prior to closing  1.  Buyer is purchasing property in "as is" condition and no repairs will be completed by seller.
69  2.  Purchase and Sale Agreement is contingent upon lender's (Bank of America) approval of the short sale and lender
70 releasing Seller/Mortgagee (Kirk-Hughes) of all obligations pertaining to this property and said loan.  All parties are aware
71 that Seller (Kirk-Hughes) has no funds to pay for any costs.  Buyer request that NO subsequent offers will be considered.  All
72 parties are aware that said property needs to be released from the Bankruptcy Court in order to proceed and close.  All
73 parties are aware that the property is in foreclosure and that "Time is of the essence."
74 _____
75 _____
76 _____
77 _____
78

79 **5. ITEMS INCLUDED & EXCLUDED IN THIS SALE:** All existing fixtures and fittings that are attached to the PROPERTY are INCLUDED IN THE
80 PURCHASE PRICE (unless excluded below), and shall be transferred free of liens. These include, but are not limited to, all seller-owned attached floor
81 coverings, attached television antennae, satellite dish, attached plumbing, bathroom and lighting fixtures, window screens, screen doors, storm doors, storm
82 windows, window coverings, garage door opener(s) and transmitter(s), exterior trees, plants or shrubbery, water heating apparatus and fixtures, attached
83 fireplace equipment, awnings, ventilating, cooling and heating systems, all ranges, ovens, built-in dishwashers, fuel tanks and irrigation fixtures and
84 equipment, that are now on or used in connection with the PROPERTY and shall be included in the sale unless otherwise provided herein. BUYER should
85 satisfy himself/herself that the condition of the included items is acceptable. It is agreed that any item included in this section is of nominal value less than $100.
86

87 (A).  ADDITIONAL ITEMS SPECIFICALLY INCLUDED IN THIS SALE: Refrigerator, Oven/Stove, Hot Water Heater
88 _____
89 _____
90 _____
91

92 (B).  ITEMS SPECIFICALLY EXCLUDED IN THIS SALE: _____
93 Caretakers personal items
94 _____
95 _____
96

97 **6. MINERAL RIGHTS:** Any and all mineral rights appurtenant to the PROPERTY are included in and are part of the sale of this PROPERTY unless
98 otherwise agreed to by the parties in writing.
99

100 **7. WATER RIGHTS:** Any and all water rights including but not limited to water systems, wells, springs, lakes, streams, ponds, rivers, ditches, ditch rights,
101 and the like, if any, appurtenant to the PROPERTY are included in and are a part of the sale of this PROPERTY unless otherwise agreed to by the parties in
102 writing.
103

104 **8. TITLE CONVEYANCE:** Title of SELLER is to be conveyed by warranty deed, unless otherwise provided, and is to be marketable and insurable except
105 for rights reserved in federal patents, state or railroad deeds, building or use restrictions, building and zoning regulations and ordinances of any
106 governmental unit, and rights of way and easements established or of record. Liens, encumbrances or defects to be discharged by SELLER may be paid out
107 of purchase money at date of closing. No liens, encumbrances or defects which are to be discharged or assumed by BUYER or to which title is taken
108 subject to, exist unless otherwise specified in this Agreement.
109

110 **9. TITLE INSURANCE:** There may be types of title insurance coverages available other than those listed below and parties to this agreement
111 are advised to talk to a title company about any other coverages available that will give the BUYER additional coverage.
112

113 (A).  **PRELIMINARY TITLE COMMITMENT:** Prior to closing the transaction, ☐ SELLER or ☐ BUYER shall furnish to BUYER a preliminary commitment
114 of a title insurance policy showing the condition of the title to said PROPERTY. BUYER shall have_____ business days (five [5] if left blank) from receipt
115 of the preliminary commitment or not fewer than twenty-four (24) hours prior to closing, within which to object in writing to the condition of the title as set
116 forth in the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if
117 the title of said PROPERTY is not marketable, or cannot be made so within _____ business days (five [5] if left blank) after notice containing a written
118 statement of defect is delivered to SELLER, BUYER's Earnest Money deposit will be returned to BUYER and SELLER shall pay for the cost of title
119 insurance cancellation fee, escrow and legal fees, if any.

121 (B). **TITLE COMPANY:** The parties agree that _____ First American _____ Title Company
122 located at _____ Lakewood Dr., Coeur d'Alene, ID _____ shall provide the title policy and preliminary report of commitment.
123

124 (C). **STANDARD COVERAGE OWNER'S POLICY:** SELLER shall within a reasonable time after closing furnish to BUYER a title insurance policy in the
125 amount of the purchase price of the PROPERTY showing marketable and insurable title subject to the liens, encumbrances and defects elsewhere set out
126 in this Agreement to be discharged or assumed by BUYER unless otherwise provided herein. **The risk assumed by the title company in the standard
127 coverage policy is limited to matters of public record.** BUYER shall receive a ILTA/ALTA Owner's Policy of Title Insurance. A title company, at
128 BUYER's request, can provide information about the availability, desirability, coverage and cost of various title insurance coverages and endorsements. If
129 BUYER desires title coverage other than that required by this paragraph, BUYER shall instruct Closing Agency in writing and pay any increase in cost
130 unless otherwise provided herein.
131

132 (D). **EXTENDED COVERAGE LENDER'S POLICY (Mortgagee policy):** The lender may require that BUYER (Borrower) furnish an Extended Coverage
133 Lender's Policy. This extended coverage lender's policy considers matters of public record and additionally insures against certain matters not shown in
134 the public record. **This extended coverage lender's policy is solely for the benefit of the lender and only protects the lender.**

BUYER'S Initials _____ X _____ ) Date 7-7-10          SELLER'S Initials _____ X _____ ) Date 9-6-10

PROPERTY ADDRESS: _____ 5697 E Aripa Road _____ Harrison ___ ID#: ___ 49662536 ___

135   **10.   INSPECTION:**
136   **(A).   BUYER chooses** ☐ to have inspection ☒ not to have inspection. If BUYER chooses not to have inspection, skip Section 10C. BUYER shall have
137   the right to conduct inspections, investigations, tests, surveys and other studies at BUYER'S expense. BUYER shall, within ___ 10 ___ business days (ten
138   [10] if left blank) of acceptance, complete these inspections and give to SELLER written notice of disapproved items. BUYER is strongly advised to
139   exercise these rights and to make BUYER'S own selection of professionals with appropriate qualifications to conduct inspections of the entire
140   PROPERTY. SELLER shall make PROPERTY available for inspection and agrees to accept the responsibility and expense for making sure all the
141   utilities are turned on for the inspection except for phone and cable. Some inspections, investigations, tests, surveys and other studies may require
142   additional days to complete. The parties agree that unless specifically set forth below, the above timeframe for investigations, tests, surveys and other
143   studies shall govern.
144   Additional inspections/timeframes:  n/a.  Buyer taking property in "As Is" condition. _____
145   _____
146   _____
147   _____
148   _____
149   _____
150   _____
151   _____
152   _____
153   _____
154
155   **(B).   FHA INSPECTION REQUIREMENT,** If applicable: "For Your Protection: Get a Home Inspection", HUD 92564-CN must be signed on or before
156   execution of this agreement.
157
158   **(C).   SATISFACTION/REMOVAL OF INSPECTION CONTINGENCIES:**
159
160   1). If BUYER **does not** within the strict time period specified give to SELLER written notice of disapproved items, BUYER shall conclusively be deemed
161   to have: (a) completed all inspections, investigations, review of applicable documents and disclosures; (b) elected to proceed with the transaction and
162   (c) assumed all liability, responsibility and expense for repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair
163   or correct.
164
165   2). If BUYER **does** within the strict time period specified give to SELLER written notice of disapproved items, **BUYER shall provide to SELLER**
166   **pertinent section(s) of written inspection reports.** SELLER shall have ___ n/a ___ business days (three [3] if left blank) in which to **respond in writing.**
167   SELLER, at their option, may correct the items as specified by BUYERS in their letter or may elect not to do so. If SELLER agrees to correct the items
168   asked for in BUYER'S letter, then both parties agree that they will continue with the transaction and proceed to closing. **This will remove BUYER'S**
169   **inspection contingency.**
170
171   3). If BUYER elects not to correct the disapproved items, or does not respond in writing within the strict time period specified, then the BUYER(S) have
172   the option of either continuing the transaction without the SELLER being responsible for correcting these deficiencies or giving the SELLER written
173   notice within ___ n/a ___ business days (three [3] if left blank) that they will not continue with the transaction and will receive their Earnest Money back.
174
175   4). If BUYER **does not** give such written notice of cancellation within the strict time periods specified, BUYER shall conclusively be deemed to have
176   elected to proceed with the transaction without repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair or
177   correct. SELLER shall make the PROPERTY available for all inspections. BUYER shall keep the PROPERTY free and clear of liens; indemnify and hold
178   SELLER harmless from all liability, claims, demands, damages and costs; and repair any damages arising from the inspections. No inspections may be
179   made by any governmental building or zoning inspector or government employee without the prior consent of SELLER unless required by local law.

180

181   **11.   LEAD PAINT DISCLOSURE:** The subject PROPERTY ☐ is ☒ is not defined as "Target Housing" regarding lead-based paint or lead-based paint
182   hazards. The term lead-based paint hazards is intended to identify lead-based paint and all residential lead-containing dusts and soils **regardless of the**
183   **source of the lead.** If yes, BUYER hereby acknowledges the following: (a) BUYER has been provided an EPA approved lead-based paint hazard
184   information pamphlet, "Protect Your Family From Lead in Your Home", (b) receipt of SELLER'S Disclosure of Information and Acknowledgment Form and
185   have been provided with all records, test reports or other information, if any, related to the presence of lead-based paint hazards on said PROPERTY,
186   (c) that this contract is contingent upon BUYERS right to have the PROPERTY tested for lead-based paint hazards to be completed no later than
187   ___ n/a ___ or the contingency will terminate, (d) that BUYER hereby ☒ waives ☐ does not waive this right, (e) that if test results show
188   unacceptable amounts of lead-based paint on the PROPERTY, BUYER has the right to cancel the contract subject to the option of the SELLER (to be given
189   in writing) to elect to remove the lead-based paint and correct the problem which must be accomplished before closing, (f) that if the contract is canceled
190   under this clause, BUYER'S earnest money deposit will be returned to BUYER. Additionally, if any structure was built before 1978 and is a residential home,
191   apartment or child-occupied facility such as a school or day-care center, federal law requires contractors that disturb lead-based paint in that structure to
192   provide the owner with a "Renovate Right" pamphlet. The contractor shall be certified and follow specific work practices to prevent lead contamination.
193

194   **12.   MOLD DISCLAIMER: BUYER is hereby advised that mold and/or other microorganisms may exist at the PROPERTY. BUYER acknowledges**
195   **and agrees to accept full responsibility and risk for any matters that may result from mold and/ or other microorganisms and to hold SELLER and**
196   **any Broker or agent representing SELLER or BUYER harmless from any liability or damages (financial or otherwise) relating to such matters.**
197

198   **13.   SQUARE FOOTAGE VERIFICATION: BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE REAL PROPERTY**
199   **OR IMPROVEMENTS IS APPROXIMATE. IF SQUARE FOOTAGE IS MATERIAL TO THE BUYER, IT MUST BE VERIFIED DURING THE INSPECTION**
200   **PERIOD.**
201

202   **14.   SELLER'S PROPERTY CONDITION DISCLOSURE FORM:** If required by Title 55, Chapter 25 Idaho Code SELLER shall within ten (10)
203   calendar days after execution of this Agreement provide to BUYER or BUYER'S agent, "Seller's Property Condition Disclosure Form" or other acceptable
204   form. BUYER has received the "Seller's Property Condition Disclosure Form" or other acceptable form prior to signing this Agreement: ☐ Yes ☐ No ☐ N/A

BUYER'S Initials ( _SK_ )( _TK_ ) Date _9-7-10_            SELLER'S Initials _GLK_ )( ____ ) Date _9-6-10_

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
National Association of REALTORS®. **USE BY ANY OTHER PERSON IS PROHIBITED.** © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: _____ 5697 E Aripa Road _____ Harrison _____ ID#: ____ 49662536 ____

205 **15. COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):** As part of the BUYER'S inspection of the PROPERTY as set forth in Section 10,
206 BUYER is responsible for obtaining and reviewing a copy of any CC&Rs which may affect the PROPERTY. BUYER shall have ___n/a___ business days (ten
207 [10] if left blank) (but in no event shall such time period exceed that time period set forth for inspections in Section 10) to review and approve of any such
208 CC&Rs that may affect the PROPERTY. Unless BUYER delivers to SELLER a written and signed objection to the terms of any applicable CC&Rs with
209 particularity describing BUYER's reasonable objections within such time period as set forth above, BUYER shall be deemed to have conclusively waived any
210 objection to the terms of any CC&Rs affecting the PROPERTY.
211
212 **16. SUBDIVISION HOMEOWNER'S ASSOCIATION:** BUYER is aware that membership in a Home Owner's Association may be required and
213 BUYER agrees to abide by the Articles of Incorporation, Bylaws and rules and regulations of the Association. BUYER is further aware that the PROPERTY
214 may be subject to assessments levied by the Association described in full in the Declaration of Covenants, Conditions and Restrictions. BUYER has
215 reviewed Homeowner's Association Documents: ☐ Yes ☒ No ☐ N/A. Association fees/dues are $ _n/a_ _____ per _____ n/a _____
216 ☐ BUYER ☐ SELLER ☐ N/A to pay Homeowner's Association **SET UP FEE of $**_____ **and/or PROPERTY TRANSFER FEES of $** _____ at closing.
217
218 **17. HOME WARRANTY PLAN:** Home Warranty Plans available for purchase can vary in many respects including, but not limited to, scope of coverage,
219 options, exclusions, limitations, service fees, and pre-existing conditions. BUYER and SELLER are advised to investigate Home Warranty Plans before
220 purchasing a plan and BUYER and SELLER acknowledge that Home Warranty Plans vary from plan to plan. Further, BUYER and SELLER acknowledge
221 that a Home Warranty Plan is separate and apart from any terms contained within this Real Estate Purchase and Sale Agreement and does not create any
222 warranties, including, without limitation, any warranty of habitability, agreements or representations not expressly set forth herein.
223 A Home Warranty Plan ☐ will ☒ will not be included in this transaction.
224 ☐ BUYER ☐ SELLER shall order a Home Warranty Plan which shall be insured by a company selected by ☐ BUYER ☐ SELLER.
225 The cost of the Home Warranty Plan shall not exceed $ _n/a_ _____ and shall be paid for at closing by ☐ BUYER ☐ SELLER.
226
227 **18. COSTS PAID BY:** The parties agree to pay the following costs as indicated below. None of the costs to be paid by the parties in this section creates
228 an inspection or performance obligation other than strictly for the payment of costs. There may be other costs incurred in addition to those set forth below.
229 Such costs may be required by the lender, by law, or by other such circumstances.

| | BUYER | SELLER | Shared Equally | N/A | | BUYER | SELLER | Shared Equally | N/A |
|---|---|---|---|---|---|---|---|---|---|
| Appraisal Fee | | | | X | Title Ins. Standard Coverage Owner's Policy | | | X | |
| Appraisal Re-Inspection Fee | | | | X | Title Ins. Extended Coverage Lender's Policy – Mortgage Policy | | | | X |
| Closing Escrow Fee | | | X | | Additional Title Coverage | | X | | |
| Lender Document Preparation Fee | | | | X | Fuel in Tank – Dollar Amount to be Determined by Supplier | | X | | |
| Tax Service Fee | | | | X | Domestic Well Water Potability Test | | X | | |
| Flood Certification/Tracking Fee | | | | X | Domestic Well Water Productivity Test | | X | | |
| Lender Required Inspections | | | | X | Septic Inspections | | X | | |
| Attorney Contract Preparation or Review Fee | | | | X | Septic Pumping | | X | | |
| Reconveyance Fee/Tracking | X | | | | Survey | | X | | |
| Recording Fees for Recon. | X | | | | | | | | |

230 SELLER agrees to pay up to EITHER ___-0-___ % (N/A if left blank) of the purchase price OR $ _n/a_ _____ (N/A if left blank) of lender-approved
231 BUYER'S closing costs, lender fees, and prepaid costs which includes but is not limited to those items in BUYER columns marked above.
232 SELLER agrees to pay up to $ _n/a_ _____ ($0 if left blank) of lender required repair costs only.
233 BUYER or SELLER has the option to pay any lender required repair costs in excess of this amount.
234
235 **19. OCCUPANCY:** BUYER ☐ does ☒ does not intend to occupy PROPERTY as BUYER's primary residence.
236
237 **20. RISK OF LOSS OR NEGLECT: Prior to closing of this sale, all risk of loss shall remain with SELLER. In addition, should the PROPERTY be**
238 **materially damaged by fire, neglect, or other destructive cause prior to closing, this agreement shall be voidable at the option of the BUYER.**
239
240 **21. FINAL WALK THROUGH:** The SELLER grants BUYER and any representative of BUYER reasonable access to conduct a final walk through
241 inspection of the PROPERTY approximately ___2___ calendar days (three [3] if left blank) prior to close of escrow, NOT AS A CONTINGENCY OF THE
242 SALE, but for purposes of satisfying BUYER that any repairs agreed to in writing by BUYER and SELLER have been completed and PROPERTY are in
243 substantially the same condition as on the date this offer is made. SELLER shall make PROPERTY available for the final walk through and agrees to accept
244 the responsibility and expense for making sure all the utilities are turned on for the walk through except for phone and cable. If BUYER does not conduct a
245 final walk through, BUYER specifically releases the SELLER and Broker(s) of any liability.

BUYER'S Initials ( _SK_ )( _TK_ ) Date _9-7-10_      SELLER'S Initials ( _PAB_ )( _____ ) Date _9-6-10_

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is distributed by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: _____ 5697 E Aripa Road _____          Harrison    ID#: ____ 49662536

**22. SINGULAR AND PLURAL** terms each include the other, when appropriate.

**23. FORECLOSURE NOTICE:** If the PROPERTY described above is currently involved in a foreclosure proceeding (pursuant to Idaho Code § 45-1506) any contract or agreement with the owner or owners of record that involves the transfer of any interest in residential real property, as defined in § 45-525(5)(b), Idaho Code, subject to foreclosure must be in writing and must be accompanied by and affixed to RE-42 Property Foreclosure Disclosure Form.

**24. MECHANIC'S LIENS - GENERAL CONTRACTOR DISCLOSURE STATEMENT NOTICE:** BUYER and SELLER are hereby notified that, subject to Idaho Code §45-525 et seq., a "General Contractor" must provide a Disclosure Statement to a homeowner that describes certain rights afforded to the homeowner (e.g. lien waivers, general liability insurance, extended policies of title insurance, surety bonds, and sub-contractor information). The Disclosure Statement must be given to a homeowner prior to the General Contractor entering into any contract in an amount exceeding $2,000 with a homeowner for construction, alteration, repair, or other improvements to real property, or with a residential real property purchaser for the purchase and sale of newly constructed property. Such disclosure is the responsibility of the General Contractor and is not the duty of your agent to obtain this information on your behalf. You are advised to consult with any General Contractor subject to Idaho Code §45-525 et seq. regarding the General Contractor Disclosure Statement.

**25. SALES PRICE INFORMATION:** Pursuant to Idaho Code §54-2083(6)(d), a "sold" price of real property is not confidential client information.

**26. FACSIMILE TRANSMISSION:** Facsimile or electronic transmission of any signed original document, and retransmission of any signed facsimile or electronic transmission shall be the same as delivery of an original. At the request of either the BUYER or SELLER, or the LENDER, or the Closing Agency, the BUYER and SELLER will confirm facsimile or electronic transmitted signatures by signing an original document.

**27. BUSINESS DAYS:** A business day is herein defined as Monday through Friday, 8:00 A.M. to 5:00 P.M. in the local time zone where the subject real PROPERTY is physically located. A business day shall not include any Saturday or Sunday, nor shall a business day include any legal holiday recognized by the state of Idaho as found in Idaho Code §73-108. The time in which any act required under this agreement is to be performed shall be computed by excluding the date of execution and including the last day. The first day shall be the day after the date of execution. If the last day is a legal holiday, then the time for performance shall be the next subsequent business day.

**28. CALENDAR DAYS:** A calendar day is herein defined as Monday through Sunday, midnight to midnight, in the local time zone where the subject real PROPERTY is physically located. A calendar day shall include any legal holiday. The time in which any act required under this agreement is to be performed shall be computed by excluding the date of execution and including the last day, thus the first day shall be the day after the date of execution. Any reference to "day" or "days" in this agreement means the same as calendar day, unless specifically enumerated as a "business day."

**29. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal.

**30. DEFAULT:** **If BUYER defaults** in the performance of this Agreement, SELLER has the option of: (1) accepting the Earnest Money as liquidated damages or (2) pursuing any other lawful right and/or remedy to which SELLER may be entitled. If SELLER elects to proceed under (1), SELLER shall make demand upon the holder of the Earnest Money, upon which demand said holder shall pay from the Earnest Money the costs incurred by SELLER'S Broker on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of title insurance, escrow fees, appraisal, credit report fees, inspection fees and attorney's fees; and said holder shall pay any balance of the Earnest Money, one-half to SELLER and one-half to SELLER'S Broker, provided that the amount to be paid to SELLER'S Broker shall not exceed the Broker's agreed-to commission. SELLER and BUYER specifically acknowledge and agree that if SELLER elects to accept the Earnest Money as liquidated damages, such shall be SELLER'S sole and exclusive remedy, and such shall not be considered a penalty or forfeiture. If SELLER elects to proceed under (2), the holder of the Earnest Money shall be entitled to pay the costs incurred by SELLER'S Broker on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of brokerage fee, title insurance, escrow fees, appraisal, credit report fees, inspection fees and attorney's fees, with any balance of the Earnest Money to be held pending resolution of the matter. **If SELLER defaults**, having approved said sale and fails to consummate the same as herein agreed, BUYER'S Earnest Money deposit shall be returned to him/her and SELLER shall pay for the costs of title insurance, escrow fees, appraisals, credit report fees, inspection fees, brokerage fees and attorney's fees, if any. This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be entitled.

**31. EARNEST MONEY DISPUTE / INTERPLEADER:** Notwithstanding any termination of this contract, BUYER and SELLER agree that in the event of any controversy regarding the Earnest Money and things of value held by Broker or closing agency, unless mutual written instructions are received by the holder of the Earnest Money and things of value, Broker or closing agency shall not be required to take any action but may await any proceeding, or at Broker's or closing agency's option and sole discretion, may interplead all parties and deposit any monies or things of value into a court of competent jurisdiction and shall recover court costs and reasonable attorney's fees.

**32. COUNTERPARTS:** This Agreement may be executed in counterparts. Executing an agreement in counterparts shall mean the signature of two identical copies of the same agreement. Each identical copy of an agreement signed in counterparts is deemed to be an original, and all identical copies shall together constitute one and the same instrument.

**33. "NOT APPLICABLE" DEFINED:** The letters "n/a," "N/A," "n.a.," and "N.A." as used herein are abbreviations of the term "not applicable." Where this agreement uses the term "not applicable" or an abbreviation thereof, it shall be evidence that the parties have contemplated certain facts or conditions and have determined that such facts or conditions do not apply to the agreement or transaction herein.

BUYER'S Initials ( JC )( TK ) Date 9-7-10          SELLER'S Initials ( CHH )( ) Date 9-6-10

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: _____ 5697 E Aripa Road _____ Harrison ___ ID#: ___ 49662536 ____

310 **34. SEVERABILITY:** In the case that any one or more of the provisions contained in this Agreement, or any application thereof, shall be invalid, illegal or
311 unenforceable in any respect, the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired thereby.
312
313
314 **35. REPRESENTATION CONFIRMATION:** Check one (1) box in Section 1 and one (1) box in Section 2 below to confirm that in this transaction, the
315 brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).
316
317 Section 1:
318 ☐ A. **The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).**
319 ☒ B. **The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.**
320 ☐ C. **The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT**
321 **acting solely on behalf of the BUYER(S).**
322 ☐ D. **The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).**
323
324 Section 2:
325 ☐ A. **The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).**
326 ☒ B. **The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.**
327 ☐ C. **The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT**
328 **acting solely on behalf of the SELLER(S).**
329 ☐ D. **The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).**
330
331 Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho
332 real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy
333 was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A
334 BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.
335
336 **36. CLOSING:** On or before the closing date, BUYER and SELLER shall deposit with the closing agency all funds and instruments necessary to complete
337 this transaction. **Closing means the date on which all documents are either recorded or accepted by an escrow agent and the sale proceeds are**
338 **available to SELLER.** The closing shall be no later than (Date) _____ On or before 11/1/10 _____.
339
340 The parties agree that the **CLOSING AGENCY** for this transaction shall be _____ First American Title Company _____
341
342 located at _____ 1866 Lakewood Dr., Coeur d'Alene, ID _____ .
343
344 If a long-term escrow / collection is involved, then the long-term escrow holder shall be _____ n/a _____ .
345
346
347 **37. POSSESSION:** BUYER shall be entitled to possession ☒ upon closing or ☐ date _____ time _____ ☐ A.M. ☐ P.M. Property
348 taxes and water assessments (using the last available assessment as a basis), rents, interest and reserves, liens, encumbrances or obligations assumed,
349 fuel in fuel tank, and utilities shall be prorated as of _____ date of recording _____ .
350
351
352 **38. ASSIGNMENT:** This Agreement and any rights or interests created herein may be sold, transferred or otherwise assigned.
353
354
355 **39. ENTIRE AGREEMENT:** This Agreement contains the entire Agreement of the parties respecting the matters herein set forth and supersedes all prior
356 Agreements between the parties respecting such matters. No warranties, including, without limitation, any warranty of habitability, agreements or
357 representations not expressly set forth herein shall be binding upon either party.
358
359
360 **40. TIME IS OF THE ESSENCE IN THIS AGREEMENT.**
361
362
363 **41. AUTHORITY OF SIGNATORY:** If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this
364 agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.
365
366
367 **42. ACCEPTANCE:** This offer is made subject to the acceptance of SELLER and BUYER on or before (Date) _____ 9/8/10 _____ at (Local Time in
368 which PROPERTY is located) _____ 5:00 _____ ☐ A.M. ☒ P.M. If acceptance of this Agreement is not received within the time specified, the offer is
369 withdrawn and the entire Earnest Money, if any, shall be refunded to BUYER on demand.

BUYER'S Initials ( _JK_ )( _TK_ ) Date _9-7-10_          SELLER'S Initials _6HB_ )( _____ ) Date _9-6-'10_