GERALDNE KIRK-HUGHES, ESQ.
Nevada Bar No. 3444
2551 S. Ft. Apache Road, #103
Las Vegas, Nevada 89117
Telephone (702) 233-8683
Facsimile (702) 233-8661
gkhughes@kirkhugheslaw.com
Debtor in Pro Se

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>GERALDINE KIRK-HUGHES,<br><br><br>Debtor. | Case No. BK-S-10-10004-BAM<br>Chapter 11<br>**Date of Hearing:  December 14, 2010**<br>**Time of Hearing:  9:00 a.m.** |

## SECOND AMENDED DISCLOSURE STATEMENT
## OF DEBTOR, GERALDINE KIRK-HUGHES

### I.    INTRODUCTION

The Debtor, GERALDINE KIRK-HUGHES ("Debtor"), submits this Disclosure Statement pursuant to §1125 of the Bankruptcy Code (11 U.S.C. §101 et seq.) and to LR 3016 of the Local Rules of Bankruptcy Practice to all known Creditors and Parties-in-Interest of the Debtor to disclose information to enable them to make an informed decision in exercising their rights to accept or reject the Debtor's Chapter 11 Plan of Reorganization (the "Plan") filed with the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court") on the 25th day of May, 2010, and amended on November 18, 2010.  (Docket #132) **[and attached hereto as new Exhibit 1.]**

The language to be deleted from the Amended Disclosure Statement has been put in brackets and made bold.  Language added or changed in this Second Amended Disclosure Statement is designated in bold within a gray background.

1

The information contained in this Disclosure Statement is subject to the approval of the Bankruptcy Court. Unless specified otherwise, the information and analysis set forth herein is current as of the date of this Disclosure Statement.

The following is a disclosure of all known information deemed to be material, important and necessary for Creditors and Parties-in-Interest to arrive at a reasonably informed decision in exercising their right to vote for the acceptance or rejection of the Debtor's Plan, which is the purpose of such a Statement.

Before deciding whether to accept or reject the Plan, you should carefully read the contents of this Disclosure Statement together with the Plan. The information contained in this Statement has not been audited and, therefore, the Debtor does not warrant or represent that the information contained herein is completely accurate.

You should not rely upon any representations or other inducements made to secure your acceptance or rejection of the Plan other than that contained in this Disclosure Statement or in another Disclosure Statement approved by the Bankruptcy Court. You should report any such additional representations or inducements to the Bankruptcy Court or to the Debtor as she is appearing Pro Se, who will deliver such information to the Bankruptcy Court.

The Plan may have tax consequences to the Debtor and to the holders of claims. For this reason, Parties-in-Interest may wish to consult their tax advisors regarding the provisions of the Plan and any particular tax consequences applicable to them emanating from the Plan.

The definitions contained in Section 1 of the Debtor's Plan of Reorganization are applicable throughout this Disclosure Statement and are incorporated herein by reference.

## II. HISTORY OF THE DEBTOR

The DEBTOR is an individual living in Las Vegas, Nevada, who owns several investment properties and who is a practicing attorney sharing equally in the ownership of the

building which houses her law office with the owner of Sahara Mortgage, the other owner and occupier of the building.

The economic woes of the Debtor coincide with the decline of the economy in Clark County, especially the decline of the real estate business. As such, the Debtor found that her investment properties were decreasing in value and beginning to put her upside down in her holdings. Moreover, the Debtor incurred substantial legal expenses for the calendar year 2008-2009 that liquidated most of her reserves. This situation coupled with the decline of paying clients in Debtor's law practice caused the Debtor to fall in arrears on her payments to both her secured creditors and her unsecured creditors. Her income as an attorney also took a tremendous hit decreasing monthly by at least sixty percent (60%).

As a result, on January 3, 2010 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). However, it was soon discovered that Debtor had too much debt to qualify for a 13 and, as a result thereof, converted the Chapter 13 Petition to a Chapter 11 Petition which was entered on or about March 16, 2010.

**III.    SUMMARY AND MEANS OF IMPLEMENTING THE PROPOSED PLAN**

**Management:** The Plan will cover a period of sixty (60) months and will be executed by the Debtor [**who, since she is appearing Pro Se, may consult with other Bankruptcy Attorneys on various questions.**] After the Confirmation Date, the Reorganized Debtor, an individual and not a business, shall maintain and keep all assets in good repair, order and condition; shall maintain liability and casualty insurance; shall file all tax returns and reports required by law or applicable regulations; and shall not take or permit to be taken by others under her direct or indirect control any action that is inconsistent with the Plan or that would interfere with or prevent implementation of the Plan. The Reorganized Debtor shall

retain the service of such professionals as she deems necessary to assist in the implementation of the Plan.

**Funding:**  The funding of the Plan will be accomplished through the wages earned by the Debtor, who has been a salaried employee of Kirk-Hughes & Associates for over twenty (20) years with a gross monthly income of Ten Thousand Dollars ($10,000.00). The [and rental income received by Debtor.  The Law Office's income is not back to its former level but has been improving.  As shown in Schedule I of her Petition and in the Means Test,] The Debtor also has monthly [does have] rental income of Eight Thousand One Hundred Six Dollars and Four Cents ($8,106.04), broken down below, and a monthly pension of One Thousand Thirty Dollars and Forty-three Cents ($1,030.43):

| | |
|---|---|
| Kirk-Hughes & Associates | $5,350.00 |
| Tucker & Associates | $1,500.00 |
| Pro-Action Limousine Services | $ 650.00 |
| Equalization Payment from Virgie Vincent | $1,100.44[2] |
| Total Rental Income | $8,600.44 |

| | |
|---|---|
| Pension | $1,030.43 |
| Net Salary | $8,735.00 |
| Total Monthly Income | $18,365.87[3] |

The Debtor's monthly expenses are as follows with a more detailed breakdown found on Amended Schedule J in the Debtor's Petition.

| | |
|---|---|
| All mortgages on real properties | $ 8,824.43 (Post-Petition) |
| All utilities & home maintenance | $ 975.00 |
| Food, clothing, laundry, cleaning | $ 1,500.00 |
| Out of pocket medical expenses | $ 770.00 |
| Transportation expenses (not car payments) | $ 600.00 |

---

[2] The Office Building located at 2551 S. Ft. Apache Road, Las Vegas, Nevada, is not subdivided but owned by the Debtor, GERALDINE KIRK-HUGHES, and Virgie Vincent. This equalization payment from Virgie is for her one-half share of the monthly mortgage and monthly payment on the property tax arrearages on said property.
[3] See Amended Schedule I.

| | |
|---|---|
| Recreation, magazines, newspapers | $ 300.00 |
| All out of pocket insurance & tax payments | $ 1,990.00 |
| Financial Assistance to Elderly Parents | $ 1,000.00 |
| U.S. Trustee Fees | $ 108.33 |
| Total Monthly Expenses | $16,067.76 |

| | |
|---|---|
| Monthly Disposable Income | $ 2,298.11 |

As shown above, all monthly post-petition payments regarding real estate plus her other monthly expenses can be paid by the Debtor from her monthly salary, rental income and pension, including the quarterly U.S. Trustee Fees of Three Hundred Twenty-five Dollars ($325.00) which equates to One Hundred Eight Dollars and Thirty-three Cents ($108.33) per month.

Debtor's total Pre-Petition payments to be paid through her Plan for Reorganization over a period of sixty (60) months are broken down as follows:

| | Total Due | Monthly Payment |
|---|---|---|
| Arrears on primary residence, 7400 Oak Grove | $38,310.00 | $ 638.50 |
| Arrears on office building, 2551 S. Ft. Apache | $ 9,457.53 | $ 157.60 |
| Priority real estate taxes arrearages on 2551 S. Ft. Apache | $59,328.11 | $ 988.80 |
| Arrears to HOA on 2551 S. Ft. Apache | $ 5,814.00 | $ 96.90 |
| Total Due & Monthly Payments | $112,909.64 | $1,881.80 |

Debtor is the borrower on a mortgage securing property located at 5697 Aripa Road, Harrison, Idaho. This property is pending Short Sale approval, therefore, it has not been accounted for in the above payments. Debtor also has not provided for the funding of the mortgage encumbering 1820 LaVerne Circle, Las Vegas, Nevada. This Court has previous issued an Order allowing Debtor to sell the LaVerne property via a Short Sale. The Short Sale had previously been approved by the Bank of America, but because Debtor couldn't get Court approval coinciding with the Bank's approval, Debtor had to start the process all over again.

Debtor is a Broker for Full Service Realty, a corporation for which she is the one hundred percent (100%) owner. In previous years, Debtor has earned income from this business; however, for the past two (2) years, no income has been derived from this source. As such, none is included in the above description of income. Should additional income become available in future years, Debtor will utilize such income to shorten the period in which to complete payments under her Plan for Reorganization.

Debtor is also the one hundred percent (100%) owner of Kirk-Hughes, Inc., dba Kirk-Hughes & Associates. Debtor is a salaried employee of Kirk-Hughes & Associates as noted above and is entitled to receive dividends from the Corporation's profits. However, no profits have been shown as the Corporation has not paid dividends for the past two (2) years. Should the Debtor receive dividends for 2011 and forward, Debtor will utilize this income to shorten the period of the Plan.

<u>Litigation:</u> There currently is no litigation pending against Debtor as all matters have been resolved. [Also] It is shown in the Debtor's Petition in her Statement of Financial Affairs (SOFA), she has been involved in four (4) Court cases. (See #4 of SOFA) Judgments have [now] been awarded in the Tomlinson Black and in the Golub cases. However, neither of these Judgments are secured. [and are now part of the Debtor's Schedule F in her Bankruptcy Petition. As such, it is highly probable that they will not figure in any distribution to unsecured creditors. The Debtor prevailed in the suit against Shelly Bawa with neither party awarded any monetary damages but with Debtor being awarded costs and fees in the amount of Four Thousand Eight Hundred Seventy-five Dollars and Twenty-nine Cents ($4,875.29). The Lucky Investors' suit against the Debtor is the only pending Court case.]

## IV. GENERAL INFORMATION ON REORGANIZATION PROCEEDINGS

Chapter 11 of the Bankruptcy Code is a remedial statute designed to effect the rehabilitation and reorganization of financially distressed individuals and entities. The statutory aims of a reorganization proceeding include the following:

(1)        preservation of the Debtor's property as a going concern and preservation of any going concern value of the Debtor's business;

(2)        avoidance of a forced and destructive liquidation of the Debtor's assets;

(3)        the protection of the interest of Creditors, both secured and unsecured; and,

(4)        the restructuring of the debts and the finances of the Debtor such as would enable the Debtor to retain those assets necessary to rehabilitate her finances and, at the same time, produce the greatest recovery for her Creditors.

The formulation and confirmation of a Plan of Reorganization is the principal function of a Chapter 11 case. Such a Plan normally includes provisions for: (1) altering and modifying rights of Creditors; (2) dealing with the property of the Debtor; (3) paying costs and expenses of administering the Chapter 11 case; and, (4) execution of the Plan. The Plan may affect the interests of all Parties and Creditors, reject Executory Contracts and provide for prosecution or settlement of claims belonging to the Debtor. In order to be confirmed by the Court, the Code requires that there be a finding that the Plan received the votes of certain requisite Classes and that the Plan be "fair, equitable, and feasible," as to any dissenting Classes of Creditors.

In order for the Plan to be "feasible", the Bankruptcy Code requires, as a condition to confirmation, that the Bankruptcy Court find that the liquidation of Debtor or the need for future reorganization is not likely to follow after confirmation. For the purpose of determining whether the Plan meets this requirement, Debtor has analyzed her ability to meet her obligations under the Plan. Debtor reasonably believes that she will be able to make all payments required to be made pursuant to the Plan.

In order for the Plan to be "fair and equitable", it must comply with the so-called

Absolute Priority Rule.  The Absolute Priority Rule requires that beginning with the most senior rank of claims of Creditors against the Debtor, each class in descending rank or priority must receive full and complete compensation before inferior or junior classes may participate in the distribution.  The Plan must be accepted by the affirmative vote of a majority (in number of Creditors holding two-thirds, in amount) of Claims filed and allowed by each Class, unless adequate provisions are made for the Classes of dissenting Creditors.  In order to fully understand how a Plan is confirmed, each individual Creditor should check with his or her own attorney and receive full advice on the inter-workings of Sections 507(a), 1111, 1112, 1123, 1124 and 1129 of the Code.

**THE FOREGOING IS A BRIEF SUMMARY OF THE HIGHLIGHTS OF A PLAN AND CONFIRMATION OF SUCH, AND THIS FOREGOING SUMMARY SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN COUNSEL BEFORE MAKING ANY DECISIONS ON A PLAN FILED HEREIN.**

In addition to the above, Section 1125 of the Code requires that there be a post-petition disclosure in the form of a Disclosure Statement which provides "adequate information" to Creditors before anyone may solicit acceptances of a Chapter 11 Plan.

**THIS DISCLOSURE STATEMENT IS PREPARED IN ACCORDANCE WITH SECTION 1125 SO AS TO PROVIDE "ADEQUATE INFORMATION" TO THE CREDITORS IN THIS PROCEEDING. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN INDIVIDUAL COUNSEL AND TO REVIEW ALL OF THE PLEADINGS FILED IN THIS BANKRUPTCY PROCEEDING IN ORDER TO FULLY UNDERSTAND THE DISCLOSURES MADE HEREIN, ANY PLAN OF REORGANIZATION FILED HEREIN, AND ANY OTHER PERTINENT MATTERS IN THIS PROCEEDING.  ANY PLAN OF REORGANIZATION WILL BE COMPLEX, ESPECIALLY SINCE IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR (OR ANY OTHER PROPONENT OF A PLAN), AND ANY INTELLIGENT JUDGMENT CONCERNING ANY PROPOSED PLAN CANNOT BE MADE WITHOUT FULLY UNDERSTANDING THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE FULL COMPLEXITIES OF ANY PLAN**

**PROPOSED HEREIN.**

The Debtor is suited for, and in need of, the broad protection afforded by Chapter 11. The Debtor should be able to effectuate a reconstruction of her financial condition through a Plan of Reorganization. The Debtor is proposing a Plan of Reorganization in accordance with a Plan submitted herewith and will move to solicit approval and acceptance of it by the Creditors, but only after there has been a judicial approval of this Disclosure Statement, including any amendments hereto, as well as any modification of the Plan.

### V. LIQUIDATION VALUE OF THE ESTATE'S ASSETS

The Debtor believes that the values of her real property holdings are equal to or less than the Deeds of Trust now held by her Creditors and other claims of record. This is so particularly since Classes 1 through 6 are impaired with Class 7 being unimpaired and Class 9 containing all the unsecured Creditors.

### VI. SUMMARY OF ASSETS AND LIABILITIES

The Statement of Financial Affairs and Schedules of Assets and Liabilities of the Debtor have previously been filed herein; and to the Debtor's best knowledge, information and belief, these Statements together with the Debtor's filed Status Reports[4] (first, April, 2010, filed 4/9/10, Docket #38; May filed 5/26/10, Docket #64; August filed 8/27/10, Docket #110; September filed 10/4/10, Docket #123; October filed 11/1/10, Docket #129); Amended List of Assets and Liabilities (filed 4/29/10, Docket #50); and Second Amended List of Assets and Liabilities (filed 5/26/10, Docket #64) contain an accurate itemization of the Debtor's assets and liabilities both prior to and after filing the Chapter 11 Petition. **[Exhibits 2 & 3]**

**THE DEBTOR BELIEVES, TO THE BEST OF HER KNOWLEDGE, INFORMATION AND BELIEF THAT THE ASSETS AND LIABILITIES SET FORTH HEREIN AND ON SAID SCHEDULES CONSTITUTE A**

---

[4] Monthly Operating Statements have not been filed as the Debtor is not a business but an individual but monthly Status Reports have been filed with the Court.

**FULL AND COMPLETE ESTIMATION OF ALL ASSETS AND LIABILITIES OF THE DEBTOR, AND AMOUNTS THEREOF (EXCLUDING INTEREST, ATTORNEY'S FEES AND ANY OTHER UNKNOWN OR VARIABLE FACTS, BEARING ON THE AMOUNT OF THE LIABILITIES). CREDITORS ARE URGED TO FULLY REVIEW WITH THEIR ATTORNEYS (AND CONSULT WITH THE DEBTOR AND HER ATTORNEY) THE SCHEDULES OF ASSETS AND LIABILITIES FILED HEREIN.**

The Debtor believes that the valuation of her assets set forth in the Schedules of Assets and Liabilities filed herewith and the information in her Status Reports, provide a fair estimate of the current value thereof if the assets were liquidated in an orderly fashion. These values are no where near the pre-petition values and would be prejudicial to the Debtor and her Creditors if they were liquidated at this time. However, in the event of the conversion of the Debtor's Estate into a Chapter 7 Bankruptcy proceeding and the subsequent liquidation of her property over a short period of time (and possibly at forced sale values), it is highly possible that a significantly lower value might even be received for Debtor's property. Therefore, the Debtor believes that she would achieve the greatest value for her property and recovery for Creditors through a Plan of Reorganization, which has been proposed by the Debtor herein. **[and is attached as Exhibit 1.]**

### VII.    *CLASSIFICATION OF CLAIMS AND INTERESTS*

#### Classification of Claims

Classes of Claims. The Claims of the Creditors are separated into designated Classes based upon the nature of the Claim. The following provisions identify the different Classes of Claims that have been designated for the purposes of this Plan. Pursuant to Bankruptcy Code Section 1123(a)(1), Administrative Claims under Bankruptcy Code Section 507(a)(1) and Priority Tax Claims under Bankruptcy Code Section 507(a)(8) are excluded from class designation.

**[Class 1. The claims classified as Class 1 are Administrative Claims entitled to**

priority payment under Section 503 or 507(a)(1)(C) of the Bankruptcy Code, which also include U.S. Trustee Fees.  Claims by attorneys and other professionals are subject to approval by the Court as to their reasonability.  The first Quarterly Fee Statement from the U.S. Trustee's Office has just been received in the amount of Three Hundred Twenty-five Dollars ($325.00).  This amount, however, may change with subsequent quarters.]

[Class 2.  The claims classified as Class 2 are owed to the Clark County Division of Taxation and entitled to priority payment under Section 507(a)(8).]

Class 1.  The claim classified as Class 1 is owed to Creditor BAC Home Loans Servicing, LP, secured by real property of which Debtor is the Obligor on a Note and Deed of Trust secured by real property located at 5697 Aripa Road, Harrison, Idaho and allowed as a Secured Claim under Section 506 of the Bankruptcy Code.  Title is currently vested solely in Kirk-Hughes Development, LLC.  [It is expected that Debtor's name will be added to the title so that the Court can properly consider this obligation under Debtor's Chapter 11 Plan.]

Fortae Management, LLC, is in second position on the Aripa Road Property and is secured by a Note and Second Deed of Trust.

Class 2.  The claim classified as Class 2 is owed to Creditor BAC Home Loans Servicing, LP, secured by real property of the Debtor in Possession located at 7400 Oak Grove, Las Vegas, Nevada, and allowed as a Secured Claim under Section 506 of the Bankruptcy Code.  The Creditor is in first position.

Class 3.  The claim classified as Class 3 is owed to Creditor CitibankNA secured by real property of the Debtor in Possession located at 7400 Oak Grove, Las Vegas, Nevada, and allowed as a Secured Claim under Section 506 of the Bankruptcy Code.  The Creditor is in second position.

**Class 4.** The claim classified as **Class 4** is owed to Creditor Bank of Nevada/Sahara Mortgage secured by real property of the Debtor in Possession located at 2551 S. Ft. Apache Road, #103, Las Vegas, Nevada, and allowed as a Secured Claim under Section 506 of the Bankruptcy Code. This Creditor is in first position.  The Debtor is including in this Class Proof of Claim #8 filed on or about March 13, 2010, by the Home Owners Association pertaining to the office building located at 2551 S. Ft. Apache Road, Las Vegas, Nevada.

**Class 5.** The claim classified as **Class 5** is owed to Creditor Colson Loan Services secured by real property of the Debtor in Possession located at 2551 S. Ft. Apache Road, #103, Las Vegas, Nevada, and allowed as a Secured Claim under Section 506 of the Bankruptcy Code.  This Creditor is in the second position.

**Class 6.** The claim classified as **Class 6** is owed to BAC Home Loans Servicing, LP, secured by real property of the Debtor in Possession located at 1820 LaVerne Circle, Las Vegas, Nevada, and allowed as a Secured Claim under Section 506 of the Bankruptcy Code.

**Class 7.** The claim classified as **Class 7** is owed to Balinda Antonie secured by real property of the Debtor in Possession located at 7400 Oak Grove, Las Vegas, Nevada, and allowed as a Secured Claim under Section 506 of the Bankruptcy Code.  This Creditor is in third position.

**Class 8.**   The Lease which is classified herein has expired and the vehicle has been relinquished to Creditor.  Therefore, there will be no affirmation of this debt and it was not even classified as an executory debt.

**Class 9.** The claims classified as **Class 9** are all unsecured claims allowed under § 502 of the Bankruptcy Code.

**Class 10.  The claims classified as Class 10 consist of all equity interests of the Debtor.**

Class 11. The claims classified as Class 11 includes every claim of Debtor, GERALDINE KIRK-HUGHES, as an ownership interest and not for repayment of a loan to or credit incurred by Debtor.

## Treatment of Claims

Treatment of Claims. The treatment of any Claim under this Plan is determined by whether the Claim is an Allowed Claim and by the Class into which such Claim is placed. In order for the Holder of a Claim to participate in this Plan, the Claim must be an Allowed Claim. Only the Holders of Allowed Claims will receive the payments and distributions provided for the various Classes of Claims under this Plan, with such distributions being affected over a sixty (60)-month period with an approximate total monthly payment of One Thousand Nine Hundred Ninety Dollars and Thirteen Cents ($1,990.13).

**[Class 1– Administrative Claims and U.S. Trustee Fees:**

**These Claims will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtor.]**

**[Class 2 - Priority Tax Claims:**

**The amount of each Allowed Priority Tax Claim shall be determined using normal procedures for the establishment and verification of Claims. All Allowed Priority Tax Claims will be paid in full by the Debtor through her Plan. No interest is to be paid on these claims.]**

Class 1 Claim of BAC Home Loans Servicing, LP, Idaho Property:

Debtor has a Loan Modification pending on this property. Once the Modification is approved, the Debtor proposes to make payments pursuant to the terms of the settlement Countrywide reached with the U.S. Attorney General's Office. The Debtor herein proposes to make the monthly Contract payment of Eighteen Hundred Dollars ($1,800.00) [plus the

**monthly taxes and insurance payment of Four Hundred Fifty Dollars ($450.00)].** Alternatively, the Debtor will seek permission of the Court to sell this property once the title issue has been resolved.

Proof of Claim #11 has been filed in the amount of Five Hundred Ninety-one Thousand Nine Hundred Twenty-nine Dollars and Sixty-eight Cents ($591,929.68). This Secured Claim will not be paid in full on the Effective Day of the Plan; therefore, it is an impaired claim.

Fortae Management, LLC, has not filed a Proof of Claim but is a secured Creditor in the amount of Two Hundred Forty Thousand Dollars ($240,000.00) which will not be paid in full on the Effective Day of the Plan; therefore, it is an impaired claim.

<u>Class 2 Claim of BAC Home Loans Servicing, LP, 7400 Oak Grove Property:</u>

This is one of the primary residences of the Debtor. All post petition payments and taxes have been paid to date. Debtor proposes to pay ten (10) months of pre-petition payments and escrow shortages through the Plan. Proof of Claim #7 has been filed by this holder of the first lien in the amount of Two Hundred Sixty-three Thousand Four Hundred Forty-nine Dollars and Eight Cents ($263,449.08) Debtor has contacted Creditor's Counsel regarding the dispute as it relates to their Proof of Claim. If the issues cannot be resolved between Counsel, Debtor will file a Motion to determine the pre-petition obligation Debtor owes Creditor. This Secured Claim will not be paid in full on the Effective Day of the Plan; therefore, it is an impaired claim. Debtor has made the post petition payments through December, 2010 however the Creditor has not cashed the checks and the funds are still showing available in Debtor's account.

<u>Class 3 Claim of Citibank NA, 7400 Oak Grove Property:</u>

This loan is a second on the residence of the Debtor and is current in accordance with the contract. Proof of Claim #5 has been filed by this holder in the amount of Three Hundred

Thousand Four Hundred Fifty-one Dollars and Twenty-six Cents ($300,451.26)   This Secured

Claim will not be paid in full on the Effective Day of the Plan, therefore, it is an impaired

claim.

>**Class 4** Claim of Bank of Nevada/Sahara Mortgage, 2551 S. Ft. Apache Property:

The Debtor executed an Adequate Protection Order which brought this loan current

through May, 2010.  The Debtor will make her monthly payments outside the Plan directly to

the Bank of Nevada in the amount of Five Thousand Five Hundred Twenty-three Dollars and

Thirty-nine Cents ($5,523.39).   Interest will be paid at the Contract rate.   The pre-petition

arrears noted in the Stipulation Agreement will be made within the Plan entered on the Docket

on May 19, 2010, as Docket #56.  This Secured Claim will not be paid in full on the Effective

Day of the Plan, therefore, it is an impaired claim.

Proof of Claim #8 has been filed by Section Seven Home Owners Association with

regard to the office building on Ft. Apache claiming arrearages of Five Thousand Eight

Hundred Fourteen Dollars ($5,814.00).  Since this building is owned by the Debtor and Virgie

Vincent, the owner of Sahara Mortgage, only half of the arrears are the responsibility of the

Debtor, i.e., Twenty-nine Hundred Seven Dollars ($2,907.00).  Since this is a pre-petition debt,

the Debtor will pay this amount through her Plan on a pro rata basis. This was addressed in the

Amended Plan filed concurrently **[herewith]** with Debtor's Amended Disclosure Statement.

Since this Secured Claim will not be paid in full on the Effective Day of the Plan, it is an

impaired claim.

>**Class 5** Claim of Colson Loan Services, 2551 S. Ft. Apache Property:

This is a second loan on the Ft. Apache Office Building.  Both the first and second

loans on this building are in the name of Virgie Vincent of Sahara Mortgage.  The total

monthly amount due on the mortgages is Nine Thousand Eight Hundred Thirty-four Dollars

15

and Sixty-nine Cents ($9,834.69) which calls for Debtor and Ms. Vincent to make monthly payments of Four Thousand Nine Hundred Seventeen Dollars and Thirty-five Cents ($4,917.35). However, the Debtor entered into a Stipulation and Order which brought this loan current on or about May 29, 2010, by paying the Bank of Nevada directly rather than Ms. Vincent. The Debtor will continue to make her payments outside the Plan directly to the Bank of Nevada in the amount of Five Thousand Five Hundred Twenty-three Dollars and Thirty-nine Cents ($5,523.39). By doing this, Ms. Vincent will have to make the monthly payment of Four Thousand Three Hundred Eleven Dollars and Thirty Cents ($4,311.30) to Colson Loan Services. Ms. Vincent has agreed to make to Ms. Kirk-Hughes an equalization payment in the amount of Six Hundred Six Dollars and Five Cents ($606.05) per month.

This Secured Claim will not be paid in full on the Effective Day of the Plan; therefore, it is an impaired claim.

Class 6 Claim of BAC Home Loans Servicing, LP, LaVerne Circle Property:

The Debtor had received a conditional approval for a short sale on this property and is in the process of filing a Motion requesting the Court to approve the sale. However, the Order signed by the Bankruptcy Judge was too late and BofA required that the Debtor start the process again. Once the sale is approved and finalized, the Proof of Claim #12 in the amount of Three Hundred Fifty-nine Thousand Seven Hundred Seventeen Dollars and Seventy-four Cents ($359,717.74) will be deemed satisfied. This is a Secured Claim but will not be paid on the Effective Day of the Plan; therefore, it is an impaired claim.

Class 7 Claim of Balinda Antonie, 7400 Oak Grove Property:

This is a Secured Claim evidenced by a Promissory Note in the amount of Three Hundred Thousand Dollar ($300,000.00) on 7400 Oak Grove, Las Vegas, Nevada, 89117. This Claim is unimpaired and will be paid in accordance with the terms of the Promissory Note.

The Creditor filed **[an Administrative]** a Proof of Claim on or about June 14, 2010, which is designated Docket #68.

**Class 8 Claim of leased vehicle:**

**The leased expired and the vehicle has been reclaimed by the dealership.**

Class 9 Claims of all Unsecured Creditors:

The Claims in this Class are, by definition, Unsecured General Claims and will likely receive no distribution under the Debtor's Plan. In the event, as was stated in the Plan, there is not likely to be any proceeds sufficient to pay these Claims. However, if there are any proceeds, the funds will be distributed among the holders of the Unsecured General Claims on a pro rata basis. As it now stands, these are all impaired claims.

Debtor proposes that the unsecured creditors holding allowed claims receive distributions which Debtor has valued at approximately One Tenth of One Cent ($.001) on the dollar. The Unsecured Creditors who filed Proofs of Claim are as follows:

Proof of Claim #1 in the amount of Twenty-one Thousand Six Hundred Fifty-one Dollars and Forty-four Cents ($21,651.44) is owed to FIA Card Services, NA and is a consumer debt. Creditor is projected to receive Twenty-one Dollars and Sixty-five Cents ($21.65) under Debtor's Plan.

Proof of Claim #2 in the amount of Five Thousand Five Hundred Forty-three Dollars and Fifty-five Cents ($5,543.55) is owed to Discover Bank and is a consumer debt. This debt is likely to be satisfied as **[there is a]** Kirk-Hughes, Inc., dba Kirk-Hughes & Associates is the joint obligor. Creditor is projected to receive Five Dollars and Fifty-four Cents ($5.54) under Debtor's Plan.

Proof of Claim #3 in the amount of One Thousand Two Hundred Ninety-one Dollars and Ninety Cents ($1,291.90) is owed to Plusfour, Inc. Creditor is projected to receive One

1    Dollar and Twenty-nine Cents ($1.29) under Debtor's Plan.

2        Proof of Claim #4 in the amount of Three Thousand One Hundred Forty-three Dollars

3    and Forty-five Cents ($3,143.45) is owed to JPMorgan Chase Bank, N.A. and is a consumer

4    debt.  Creditor is projected to receive Three Dollars and Fourteen Cents ($3.14) under

5    Debtor's Plan.

6        Proof of Claim #6 in the amount of One Million Three Hundred Ninety-two Thousand

7    Six Hundred Eighty Dollars ($1,392,680.00) is owed to Alan and Marilyn Golub by way of a

8    Civil Judgment.  Creditor is projected to receive One Thousand Three Hundred Ninety-

9    two Dollars and Sixty-eight Cents ($1,392.68) under Debtor's Plan.

10       Proof of Claim #9 in the amount of Four Thousand Five Hundred Fifteen Dollars and

11   Forty-nine Cents ($4,515.49) is owed to Citibank  South Dakota NA (VISA) and is a consumer

12   debt.  Creditor is projected to receive Four Dollars and Fifty-two Cents ($4.52) under

13   Debtor's Plan.

14       Proof of Claim #10 in the amount of Forty-two Thousand Six Hundred Seventy Dollars

15   and Ninety-nine Cents ($42,670.99) is owed to Citicorp Trust Bank and is a consumer debt.

16   Creditor is projected to receive Forty-two Dollars and Sixty-seven Cents ($42.67) under

17   Debtor's Plan.

18       Proof of Claim #14 in the amount of Four Thousand Six Hundred Twenty-one

19   Dollars and Seventy-one Cents ($4,621.71) is owed to American Express Bank FSB and is

20   a consumer debt.  Creditor is projected to receive Four Dollars and Sixty-two Cents

21   ($4.62) under Debtor's Plan.

22       Proof of Claim #15 in the amount of Eight Thousand Nine Hundred Fifty-four

23   Dollars and Sixty-six Cents ($8,954.66) is owed to American Express Bank FSB and is a

24   consumer debt.  Creditor is projected to receive Eight Dollars and Ninety-five Cents

1  ($8.95) under Debtor's Plan..

2      Proof of Claim #16 in the amount of Six Thousand Three Hundred Thirty-six

3  Dollars and Thirty-two Cents ($6,336.32) is owed to American Express Bank FSB and is a

4  consumer debt. Creditor is projected to receive Six Dollars and Thirty-four Cents ($6.34)

5  under Debtor's Plan.

6

7      The Unsecured Creditors who did not filed Proofs of Claim are as follows:

8      Chase Bank in the amount of Thirteen Thousand One Hundred Forty-three

9  Dollars ($13,143.00) which is a consumer debt. Creditor is projected to receive Thirteen

10  Dollars and Fourteen Cents ($13.14) under Debtor's Plan.

11

12      Citifinancial Retail in the amount of Forty-two Thousand Two Eighty-nine Dollars

13  ($42,289.00) which is a consumer debt. Creditor is projected to receive Forty-two Dollars

14  and Twenty-nine Cents ($42.29) under Debtor's Plan.

15      Clark County Collection in the amount of Two Hundred Sixty-two Dollars

16  ($262.00) which is a consumer debt. Creditor is projected to receive Twenty-six Cents

17  ($.26) under Debtor's Plan.

18

19      CR Evergreen, LLC, Seattle, Washington, with no reported debt at this time.

20      Dish Network in the amount of Two Hundred Twenty-seven Dollars ($227.00)

21  which is a consumer debt. Creditor is projected to receive Twenty-three Cents ($.23)

22  under Debtor's Plan.

23      Freilich & Popowitz, LLP, Robert Freilich, Esq., in the amount of Sixty-five

24  Thousand Dollars ($65,000.00) for legal fees. Creditor is projected to receive Sixty-five

25  Dollars ($65.00) under Debtor's Plan.

26

27      H20 Well Service in the amount of One Hundred Ninety-three Dollars ($193.00)

28  which is a consumer debt. Creditor is projected to receive Nineteen Cents ($.19) under

Debtor's Plan.

Oxford Collection Service in the amount of Two Thousand One Hundred Forty Dollars ($2,140.00) which is a consumer debt. Creditor is projected to receive Two Dollars and Fourteen Cents ($2.14) under Debtor's Plan.

Thompson, Kristen, Esq., in the amount of Ten Thousand Dollars ($10,000.00) for legal fees. Creditor is projected to receive Ten Dollars ($10.00) under Debtor's Plan.

Tomlinson Black North Idaho, Inc., in the amount of Four Hundred Fifty Thousand Dollars ($450,000.00) by way of a Civil Judgment. Creditor is projected to receive Four Hundred Fifty Dollars ($450.00) under Debtor's Plan.

Verizon Network in the amount of Two Hundred Thirty-six Dollars ($236.00) which is a consumer debt. Creditor is projected to receive Twenty-four Cents ($.24) under Debtor's Plan.

Class 10 Claims of all Equity Interests:

There are no assets that can be liquidated to provide funds for payment to the Creditors as the Debtor has minimal equity that would be subject to liquidation of the real properties being maintained by Debtor. The value of the property on the office building located at 2551 S. Ft. Apache Road, Las Vegas, Nevada, 89117, is equal to the equity in the property.

Class 11 Claims of all Executory Contracts:

One executory contract is listed by Debtor on Schedule G, which is a contract for the purchase of the Certificate in exchange for a debt owed to Debtor in the amount of Two Hundred Ninety-eight Thousand Dollars ($298,000.00).

Administrative Claims:

The amount of each Allowed Administrative Claim shall be determined using

normal procedures for the establishment and verification of Claims. Under the Plan, each holder of an Allowed Administrative Claim will be paid the amount of such Allowed Administrative Claim, in cash, on the Effective Date. The U.S. Trustee is currently receiving Three Hundred Twenty-five Dollars ($325.00) each quarter. Debtor is paying these fees on a quarterly basis, with an allocation of One Hundred Eight Dollars and Thirty-three Cents ($108.33) added to her monthly expenses.

Priority Tax Claims:

The amount of each Allowed Priority Tax Claim shall be determined using normal procedures for the establishment and verification of Claims. All Allowed Priority Tax Claims will be paid in full through the Plan by the Debtor, which currently is approximately Forty-eight Thousand Dollars ($48,000.00) on the property located at 2551 S. Ft. Apache Road, Las Vegas, Nevada, 89117.

Objections to Claims.

Any Claim set forth on a Proof of Claim that was filed with the Bankruptcy Court prior to the Bar Date of July 28, 2010, shall be deemed to be an Allowed Claim unless the Debtor[, **the Committee,**] or any Creditor or other Party-in-Interest files an Objection to the allowance of such Claim, the amount of such Claim, or the classification of such Claim. All Objections to Claims under this Plan, including Objections as to whether a Claim is an Allowed Claim, the amount of any Allowed Claim, and the Class to which any Allowed Claim belongs, shall be determined by the Bankruptcy Court. Unless extended by the Bankruptcy Court, all Objections to Claims in this Plan shall be filed within sixty (60) days after the Effective Date.

Disputed Claims.

To date, there are no disputed claims.

[Notwithstanding any other provisions of this Plan [or the Liquidating Trust

21

Agreement, the Holder of any Disputed Claim will not receive any distributions from the Liquidating Trust for the disputed portion of such Claim until the disputed portion of such Claim, or some portion of such disputed amount, is allowed by the Bankruptcy Court.  On the Effective Date, the Liquidating Trustee shall establish a Disputed Claims Reserve to hold Trust Receipts with respect to Disputed Claims which would otherwise be allocable to the Trust account established for the class of Claims to which the Disputed Claim belongs.  Any Trust Receipts allocated to the Disputed Claims Reserve with respect to a Disputed Claim shall be held by the Liquidating Trust until the Bankruptcy Court determines the allowed portion of the Disputed Claim or until further order of the Bankruptcy Court.  At this point, the Plan provides for the payment of nothing at all to holders of Unsecured Claims without priority.]

Executory Contracts

There is one Executory Contract in the Debtor's Plan between Kirk-Hughes, Sampson Family Trust of which the Debtor is a fifty percent (50%) owner and Pro-Action Limousine & Concierge Services, Inc.  Pro-Action Limousine has a debt owned to Geraldine Kirk-Hughes personally in the amount of Two Hundred Ninety-eight Thousand Dollars ($298,000.00).  To date, Pro-Action has paid nothing on the debt to Ms. Kirk-Hughes and is currently in the process of transferring the Certificate to Kirk-Hughes, Sampson Family Trust to satisfy the debt.  This is a limousine business with the Certificate to operate five (5) cars.  Although the Limousine Company is not currently profitable, it is not losing money and pays rent to Ms. Kirk-Hughes for the office space it utilizes.  Upon the transfer of the Certificate, Debtor intends to oversee this operation and hopes that this asset will become profitable and will generate additions revenue to assist in the payment of the Chapter 11 Plan, in hopes of shortening the time to complete this Plan.

<u>Disclosures Pursuant to 11 USC 1129(a)(5)</u>

The Debtor herein is an individual and not a business, as such, the Debtor believes that Section 1129(a)(5) is not applicable to her situation. Nevertheless, there are no "Insiders" at this time since the Debtor is proceeding in this matter Pro Se and there is no need for "Directors", "Officers" or "Trustees".

## VIII.  MISCELLANEOUS

**A.  Retention of Jurisdiction.**

The Court shall retain jurisdiction of this case for the following purposes:

(1)    allowance of compensation and other administrative expenses;

(2)    resolution of objections to claims;

(3)    correction of any defect, omission or inconsistency in the Plan, or the Order confirming the Plan as may be necessary to carry out the purposes and intent of the Plan;

(4)    modification of the Plan in accordance with the provisions of 11 U.S.C. § 1127;

(5)    resolution of all questions and disputes regarding title to property and resolution of all causes of action, controversies, disputes or conflicts arising out of the Plan, the order confirming the Plan, or any other Order issued with respect to the Plan, including, without limitation, disputes arising out of the failure of the Debtor, any Creditor, or other Party-in-Interest to perform obligations required under the Plan; and

(6)    resolution of requests to close or reopen this case.

**B.  Effect of Confirmation**

The Plan provides that the entry of the Confirmation Order discharges and terminates, as of the Effective Date, all Claims against Debtor that arose at any time before the Confirmation Order was entered. The discharge of Debtor under the Plan will be effective as to any claims against Debtor, regardless of whether a Proof of Claim thereof was scheduled or filed, whether the Claim is an Allowed Claim or whether the holder thereof has voted to accept or reject the Plan.

## C.  Effective Date

The Effective Date is defined in the Plan.  Many important events under the Plan occur on or after the Effective Date.

## D.  Substantial Confirmation

The Plan will be deemed to be substantially consummated upon the Effective Date.

## E.  Reservation of Rights

The filing of the Plan, any statement or provision contained in the Plan, or any action by any Party with respect to the Plan, shall not be considered an admission against interest or a waiver of any rights, except as stated in the Plan as finally confirmed.  In the event the Plan is not confirmed, the Plan, any statement or provision contained in the Plan may not be used or relied upon in any suit, action, controversy or other proceeding.

## F.  Right to Withhold Confirmation Order or Not to Proceed

If there are any impediments or delays in confirming the Plan, the Debtor reserves the right to withhold the Order confirming the Plan or proceed under the Plan until such time as the Plan has been confirmed by the Court and the Effective Date under the Plan has passed.

## IX.  RISK FACTORS

In addition to other matters addressed elsewhere in this Disclosure Statement, the Plan involves certain significant risks that should be taken into consideration, including those material risk factors set forth below.

## A.    Risk of Non-Payment

Upon the effectiveness of the Plan, Debtor will have substantial debt.  While the projections included herein anticipate that Debtor will be able to meet her debt service obligations, any forecast of future financial results must be based upon a number of assumptions that are subject to inherent uncertainties and contingencies, many of which are

24

beyond the control of the Debtor.  Accordingly, there can be no assurance in this regard that Debtor will be able to satisfy all of her debt obligations.

**B.      Tax Risks**

The federal, state, local and foreign tax consequences of the Plan are complex and, in many areas, uncertain.  Holders of Claims are strongly urged to consult their tax advisers for specified reference to the federal, state, local and foreign tax consequences of the Plan with respect to their Claim.  Debtor makes no assurances regarding the federal, state, local and foreign tax consequences of the Plan with respect to any Claim.

**C.      Risk of Non-Confirmation of the Plan**

Even if the requisite acceptances are received, the Plan may not be confirmed by the Bankruptcy Court, which sits as a Court of Equity and may exercise substantial discretion. Confirmation of the Plan requires, among other things, a finding by the Bankruptcy Court that there will not be a need for further financial reorganization and that the value of distributions to Classes of dissenting Creditors not be less than the value of distributions such Creditors would receive if Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  Although Debtor believes that the Plan will not be followed by a further need for financial reorganization and that dissenting Creditors will receive distributions at least as great as they would receive in a liquidation under Chapter 7 of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will conclude that these tests have been met.  Furthermore, the effectiveness of the Plan is subject to certain conditions and there can be no assurance that such conditions will be satisfied.

## X. ACCEPTANCE AND CONFIRMATION

**A.      Voting Procedures**

Generally:

Only those Classes that are impaired under the Plan are entitled to vote to accept or reject the Plan.  In that regard, Classes 3 through 8, 10 and 11 are impaired under the Plan and are entitled to vote.  Classes 1, 2, the second part of 6 (the HOA) and 9 are not impaired under the Plan and are deemed to have accepted the Plan without voting.  The Debtor reserves the right to supplement this Disclosure Statement (if necessary) and to solicit any of the Classes which may prove to be impaired, as the Reorganization Case develops further.

Ballots will be sent to the known holders of Claims whether or not such Claims are disputed.  However, only the holders of Allowed Claims (or Claims that have been temporarily allowed or have been estimated by the Bankruptcy Court), who are impaired are entitled to vote on the Plan.  A Claim to which an Objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the Objection and any appeals are determined.  The holders of such Disputed Claims are not entitled to vote on the Plan unless they request that the Bankruptcy Court, pursuant to Bankruptcy Rule 3018, temporarily allow the Claims in appropriate amount solely for the purpose of enabling the holders of such Disputed Claims to vote on the Plan; and the Bankruptcy Court does so.

Incomplete Ballots:

Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will be regarded as a vote for acceptance of the Plan.  In addition, unless otherwise indicated, a vote cast by a Person will constitute an acceptance or rejection of the Plan with respect to each Allowed Claim held, directly or indirectly, by such Person.

Waivers of Defects, Irregularities, etc.:

Unless otherwise directed by the Bankruptcy Court, all questions as to validity, form, eligibility (including time of receipt), acceptance and revocation or withdrawal of Ballots will

be determined by the Debtor in her sole discretion, whose determination will be final and binding. As indicated below under "Withdrawal of Ballots", effective withdrawals of Ballots must be delivered to the Debtor prior to the voting deadline. The Debtor reserves the absolute right to contest the validity of such withdrawal. The Debtor also reserves the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtor or her Counsel, be unlawful. The Debtor further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and instructions thereto) by the Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all Parties. Unless waived, any defects or irregularities that have not theretofore been cured or waived will be invalidated.

Withdrawal of Ballots; Revocation:

Any Creditor holding an Allowed Claim which is impaired who has delivered a Ballot for or against the acceptance of the Plan may withdraw such acceptance or rejection by delivering a written Notice of Withdrawal to the Debtor at any time prior to the voting deadline.

A Notice of Withdrawal, to be valid, must: (i) contain the description of the Claim to which it relates and the amount of such Claim; (ii) be signed by the voting Creditor in the same manner as the Ballot; and (iii) be received by the Debtor in a timely manner at the address set forth below. As indicated above, the Debtor expressly reserves the right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported Notice of Withdrawal of Ballots which is not received in a timely manner will not be effective to withdraw a previously furnished Ballot.

Submission of Ballots:

The forms of Ballot for each of the Classes entitled to vote on the Plan will be sent to all Creditors listed on the Schedules or who have filed Proofs of Claim in this case along with a copy of the Court-approved Disclosure Statement and the proposed Plan.  Creditors should read the Ballot carefully.   If any Creditor has any questions concerning voting procedures, that Creditor may contact:

> Geraldine Kirk-Hughes, Esq.
> 2551 S. Ft. Apache Road, #103
> Las Vegas, Nevada 89117
> (702) 233-8683; Fax No.: (702) 233-8661
> gkhughes@kirkhugheslaw.com

## XI.  ALTERNATIVES TO THE PLAN

Debtor believes that the Plan and the debt restructuring contemplated therein will enable Debtor to pay her secured Creditors.  Liquidation will not provide a full return on all Allowed Secured Claims as there is no equity in any of the Debtor's investment properties.  Debtor also believes that the Plan provides the greatest possible recovery to all Secured Creditors and Unsecured Creditor with priority Claims.  Debtor believes that the Plan, as described herein, enables the greatest number of Creditors to receive payment of their Allowed Claims as quickly as possible.

## XII.  HEARING ON CONFIRMATION

A Notice on the Hearing on Confirmation of the Plan will be mailed to all Creditors stating that the Hearing is set for December 14, 2010, at 9:00 a.m. before the Honorable Bruce A. Markell, United States Bankruptcy Courthouse, 300 Las Vegas Blvd. South, Las Vegas, Nevada, 89101, Courtroom 3 on the Third Floor.   All Objections must be in writing, filed with the Court, and a copy served on the Debtor.  Creditors will be given notice of the final date such Objections can be filed with the Court..  If there are any impediments or delays in confirming the Plan, the Debtor reserves the right to withhold any Order confirming the Plan or

1    not proceed under the Plan until such time as the Plan has been confirmed by the Bankruptcy

2    Court and no appeals have been filed related to the Order confirming the Plan.

3    **A.      Effect of Confirmation**

4
         The provisions of the Plan shall bind all Parties-in-Interest whether or not such Parties
5
     are impaired under the Plan and whether or not such Parties have accepted the Plan.
6

7    **B.      Consequence of the Failure to Confirm the Plan**

8        In the event that the requirements for confirmation of the Plan are not satisfied, the Debtor

9    believes that it will be necessary to revise the Plan in order to achieve confirmation or move the

10   Court to convert the case to a case under chapter 7.

11   **C.      Modification of the Plan**

12
13       Debtor may propose modifications to the Plan at any time before confirmation,

14   provided that the Plan, as modified, meets the disclosure requirements of the Bankruptcy

15   Code.

16
                         *XIII. CONCLUSION*
17
         This Disclosure Statement may not contain all of the information concerning
18
     GERALDINE KIRK-HUGHES on file with the Bankruptcy Court. Reference is made to the
19
20   Plan of Reorganization and the Court file for additional documents.  Debtor believes that

21   acceptance of the Plan is in the best interests of each and every class of Claimants and

22   recommends that each Creditor vote to accept the Plan.

23       DATED this 22nd day of December, 2010.

24
25                                    */s/ Geraldine Kirk-Hughes*

26                                    Geraldine Kirk-Hughes, Esq.
                                      Nevada State Bar #3444
27                                    2551 S. Ft. Apache Road, #103
                                      Las Vegas, Nevada  89117
28                                    Debtor in Pro Se

                                      29